**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KRISTINA OLIVER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>AMERIDIAL, INC., an Ohio Corporation, and TTC AMERIDIAL, LLC, an Illinois Corporation<br><br>*Defendants.* | Case No. 1:16-cv-05177<br><br>**CLASS ACTION** |

**PLAINTIFF OLIVER'S MOTION TO COMPEL DISCLOSURE OF CLASS LIST**

## I.   INTRODUCTION

This alleged class action challenges harassing phone calls made by Defendant TTC Ameridial, LLC ("TTC-Ameridial" or "Defendant") under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). The facts are straightforward: Defendant TTC-Ameridial, LLC ("TTC-Ameridial") received leads—contact information about potential college students—from a company known as Marketing Webb, LLC. ("Marketing Webb"). Marketing Webb ran a website, www.collegeprograms.co, that it used to obtain the lead information. Plaintiff Kristina Oliver ("Oliver") alleges that www.collegeprograms.co failed to obtain lawful prior express consent from her or anyone else to be subjected to TTC-Ameridial's autodialed cellphone calls.

The Parties are in the midst of discovery and a dispute has arisen regarding TTC-Ameridial's duty to provide data that can be used to compile the class list. That is, through three separate requests (Interrogatory Nos. 7 & 14 and Request to Produce No. 36), Plaintiff has sought the phone numbers—and other lead information—that TTC-Ameridial called where the phone number was obtained by TTC-Ameridial from Marketing Webb via the

collegeprograms.co website. Oliver needs this information to demonstrate to the Court that the class is ascertainable, common issues of law and fact exist and predominate over individual issues, and that a class can be identified in a manageable and superior way under Rule 23(b)(3). TTC-Ameridial has objected on the grounds that such data are protected trade secrets.

The Parties attempted to resolve the dispute via meet and confers but have been unsuccessful. As such, Oliver seeks an Order from this Court compelling complete responses to Interrogatory Nos. 7 & 14 and to Request to Produce No. 36.

## II.     STATEMENT OF FACTS

*TTC Ameridial telemarkets to potential students using leads obtained from Marketing Webb*

Defendant TTC-Ameridial provides telemarketing services and lead generation services for businesses in the education sector, including operating call centers and making calls to consumers who may be interested in educational opportunities. (Compl. ¶ 13.) Through discovery, Oliver has learned that TTC-Ameridial obtained a lead with her phone number from a company called Marketing Webb. (*See* "Declaration of Ken Webb," a true and accurate copy of which is attached as Ex. A.) Marketing Webb, acting on TTC-Ameridial's behalf, obtained leads through a website called www.collegeprograms.co. (Ex. A.)

But here's the rub: the disclosures on the collegeprograms.co website failed to secure prior express written consent for TTC-Ameridial to make the calls. Rather, collegeprograms.co (at least as it appeared when Oliver was called) indicates that visitors who enter their personal information may be called by "online-edu-help.com." (Ex. A.) A quick search of the Illinois Secretary of State's website shows that online-edu-help.com is an assumed name of Shanley Corp—not of TTC-Ameridial. (*See* "Secretary of State" print out, a true and accurate copy of which is attached hereto as Ex. B.) Rather, TTC-Ameridial uses the assumed name Online EDU Help, a separate and distinct company. Further, at the time Oliver consented there is no way to

2

use the collegeprograms.co website[1] without agreeing to receive autodialed calls.

*Oliver Serves Discovery; TTC-Ameridial Objects to Providing the List of Numbers it Called*

On August 26, 2016, Oliver served written interrogatories and request to produce documents. TTC-Ameridial provided responses but objected to providing a list of the numbers that it called where the called party's contact information had come to TTC-Ameridial from Marketing Webb via the www.collegeprograms.co website. Specifically, Oliver requested, and TTC-Ameridial objected, as follows:

> **INTERROGATORY NO. 7**: Identify all cellphone numbers to whom You (or any person acting on Your behalf, for Your benefit, or in accordance with any agreement with You) caused to be placed at least one call where prior express consent to make the call was obtained via collegeprograms.co.
>
> **RESPONSE:** TTC-Ameridial objects to this Interrogatory on the grounds that it is overbroad and seeks information protected by trade secret disclosure of which would irreparably harm TTC-Ameridial. The identities of TTC-Ameridial's customers and clients are protected trade secrets and are therefore protected from disclosure. TTC-Ameridial therefore denies the request.
>
>     \*        \*        \*        \*
>
> **INTERROGATORY NO. 14**: Identify all Persons who You (or Marketing Webb acting on Your behalf, for Your benefit, or in accordance with any contract with You) caused to be called on their cellphones where the Person's Lead information was obtained by Marketing Webb via the collegeprograms.co website together with the total number of calls to each person so identified.
>
> **RESPONSE:** See Response to Interrogatory No. 7.
>
>     \*        \*        \*        \*
>
> **REQUEST TO PRODUCE NO. 36:** All Documents sufficient to Identify all Leads and Lead Information You received from Marketing Webb that was collected through the collegeprograms.co website.
>
> **RESPONSE:** TTC-Ameridial objects to this Request on the grounds that it is overbroad and seeks information protected by trade secret disclosure of which

---

[1] Notably, since the filing of the lawsuit the collegeprograms.co website has been modified to now state "Website Under Construction, Come Back Soon."

3

would irreparably harm TTC-Ameridial. The identities of TTC-Ameridial's customers and clients are protected trade secrets and are therefore protected from disclosure. TTC-Ameridial therefore denies the request.

The requests define "Leads" or "Lead Information" to mean:

[P]ersonally identifiable information including name, email address, cellphone number, landline phone number, date of birth, address, gender, GPA, desired degree programs and levels, whether the person was a member of the military or a military family, and other information obtain by Marketing Webb about cellphone users through its operation of the website www.collegeprograms.co.

### *The Parties are Unable to Resolve the Discovery Dispute Through Meet and Confers*

Shortly following Plaintiff counsel's receipt of TTC-Ameridial's responses Plaintiff's counsel sent a discovery letter outlining certain deficiencies. (*See* "Declaration of Attorney Steven Woodrow ("Woodrow Decl."), attached hereto as Ex. C.) Counsel for the Parties thereafter met and conferred by telephone in an attempt to work through the issues. (Woodrow Decl. ¶ 3.) While most of the disputes were resolved, the Parties were unable to come to an agreement on Interrogatory Nos. 7 & 14 and Request to Produce No. 36. (*Id*. at ¶ 4.) Plaintiff's counsel indicated that such information is needed to identify class members. (*Id*. at ¶ 4.) TTC-Ameridial's counsel responded that the data represent a protected trade secret. (*Id*. at ¶ 5.) Plaintiff's counsel offered to enter into an agreed confidentiality order or protective order that would require the information only be used for the purposes of this lawsuit and, if ever filed with the Court, to only be done so under seal. (*Id*. at ¶ 6.) TTC-Ameridial declined to agree and confirmed that the Parties were at issue. (*Id*. at ¶ 7.)

As explained below, the Court should grant the Motion to Compel.

### III.  ARGUMENT

As the Court is well aware, "[d]iscovery is to be freely and liberally granted in federal civil litigation." *Smith v. Aon Corp.*, No. 04 C 6875, 2007 WL 495306, at *3 (N.D. Ill. Feb. 14, 2007). The concept of "relevance" in the context of discovery "has been construed broadly to

4

encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 350 (1978). Indeed:

> Federal Rule of Civil Procedure Rule 26(b)(1) permits discovery of information relevant to any party's claim or defense, but the potential relevance of discovery requests must be considered in light of the other factors identified by the rule: it must be 'proportional to the needs of the case, considering ... the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'

*CMB Exp., LLC v. Atteberry*, No. 413CV04051SLDJEH, 2016 WL 5660382, at *5 (C.D. Ill. Sept. 29, 2016) (citing Fed. R. Civ. P. 26(b)(1)). "District courts have broad discretion in deciding motions to compel," *see James v. Hyatt Regency Chicago,* 707 F.3d 776, 784 (7th Cir. 2013); *see also Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996); *Hannah's Boutique v. Surdej*, No. 13-CV-2564, 2014 WL 1227936, at *2 (N.D. Ill. Mar. 25, 2014), and "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Surdej*, No. 13-CV-2564, 2014 WL 1227936, at *1 (N.D. Ill. Mar. 25, 2014) (*quoting Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006)); *see also Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05CV01411OWWGSA, 2010 WL 716306, at *1 (E.D. Cal. Mar. 2, 2010) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citations omitted).

With respect to pre-certification discovery, "[c]ourts generally recognize the need for pre-certification discovery relating to class issues. *Del Campo v. Kennedy,* 236 F.R.D. 454, 459 (N.D. Cal. 2006); *McCowen v. Trimac Transp. Servs. (W.), Inc.*, No. 14-CV-02694-RS (JSC), 2015 WL 5184473, at *3 (N.D. Cal. Sept. 4, 2015). That is, "discovery is likely warranted where

it will help resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether there are grounds for a class or subclass. *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 210 (9th Cir. 1975); *see also Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977) ("It is an abuse of discretion to deny discovery where it is necessary to determine the existence of a class or subclass.") In fact:

> [a]s to class lists specifically, the Supreme Court in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, fn. 17 (1978), explained: "We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information would be relevant to issues that arise under Rule 23 ... or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.") *Oppenheimer,* 437 U.S. at 353 fn. 17 (1978). After reviewing Plaintiffs' motion and supporting evidence, it is clear Plaintiffs' request for class list contact information is relevant to their claims of commonality and predominance.

*Kilbourne v. Coca-Cola Co.*, No. 14CV984 MMA (BGS), 2015 WL 10943611, at *5 (S.D. Cal. Jan. 13, 2015).[2]

With these principles in mind, and as explained below, the information sought via Interrogatory Nos. 7 & 14 and Request to Produce No. 36 is relevant to whether a class should be

---

[2] Indeed, numerous courts have found that disclosure of class members' contact information is appropriate in class actions prior to certification. *See, e.g., Wellens v. Daichi Sankyo Inc.,* No. C–1300581–WHO (DMR), 2014 WL 969692, at *4 (N.D. Cal. Mar. 5, 2014); *Stokes v. Interline Brands, Inc.,* No. C–12–05527 JSW (DMR), 2013 WL 4081867, at *2–3 (N.D. Cal. Aug. 9, 2013); *Willner v. Manpower, Inc.,* No. C 11–2846 JSW (MEJ), 2012 WL 4902994, at *56 (N.D. Cal. Oct. 16, 2012); *Justison v. McDonald's Corp.*, No. C.A.08-448-JJF, 2010 WL 2382604, at *3 (D. Del. June 11, 2010) (granting motion to compel disclosure of class member contact information prior to certification); *Sjoblom v. Charter Commc'ns, LLC,* No. 3:07–cv–0451–bbc, 2008 WL 4276928, at *2–3 (W.D. Wis. Jan.4, 2008) (granting motion to compel and ordering defendant to produce discovery related to prospective class members prior to certification); *Acevedo v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550, 553–54 (N.D. Ill. 2008) (ordering defendants to produce contact information of similarly situated employees because "'provisional certification is not necessarily a prerequisite for conducting limited discovery' for defining the proposed class").

certified in this case, and Defendant's objection that the information sought is a protected trade secret lacks merit. As such, the Court should grant the instant Motion to Compel.

> **A. The phone numbers and other contact information sought via Interrogatory Nos. 7 & 14 and Request to Produce No. 36 are relevant to ascertainability, Rule 23(a)'s requirement of commonality, and Rule 23(b)(3)'s requirements of predominance and manageability.**

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone[.]" *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *3 (N.D. Ill. June 13, 2011) (*citing Powell v. West Asset Mgmt. Inc.,* 2011 WL 1126040, at *2 (N.D .Ill. Mar. 24, 2011)); *see also* 47 U.S.C. § 227(b)(1)(A)(iii)); *see also* 47 C.F.R. § 64.1200(a)(2). The class list is necessary to show these elements can be adjudicated for a defined class of similarly situated cellphone users.

> **1. The Class List is relevant to demonstrating ascertainability and commonality.**

The data requested via Interrogatory Nos. 7 & 14 and Request to Produce No. 36 is first relevant to showing that the class is ascertainable. A class definition is sufficient if class membership is "defined by objective criteria." *Mullins v. Direct Digital LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Objective criteria may include a defendant's business records. *See, e.g., Saltzman v. Pella Corp.*, 357 F.R.D. 471, 475-76 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010). Here, the class has been defined as:

> **Autodialed No Consent Class**: All persons in the United States who from May 12, 2012 to the present: (1) Defendants (or a third person acting on behalf of Defendants) caused to be called; (2) on the person's cellular telephone number; (3) using an automatic dialing system; and (4) who Defendants claim they obtained prior express written consent to call in the same manner as Defendants claim they obtained prior express consent to call the Plaintiff.

(Compl. ¶ 28.) (Dkt. 1.) Because Plaintiff and everyone else supposedly gave consent by providing their contact information on the www.collegeprograms.co website, data identifying the persons who TTC-Ameridial called after having obtained their lead information from Marketing Webb via the collegeprograms.co website is plainly probative of whether membership in the class can be ascertained. Such records are in the sole possession of Defendant (and perhaps Marketing Webb),[3] and are unquestionably objective—there is certainly nothing subjective about whether a call was made, whether the call was placed to the person's cellphone number, and whether Defendant made the call after obtaining the user's cellphone number from Marketing Webb via the www.collegeprograms.co website.

      Further, to show that a class can be certified, Oliver must demonstrate that common questions of law and fact exist. Fed. R. Civ. P. 23(a)(2). Generally speaking, in a TCPA class action "[w]here a common faulty method of consent is advanced, Rule 23(a)(2) commonality is satisfied. *See Wolfkiel v. Intersections Ins. Servs. Inc*., 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party"); *see also Hinman v. M & M Rental Ctr*., 545 F.Supp.2d 802, 806–07 (N.D. Ill. 2008); *Birchmeier v. Caribbean Cruise Line,*

---

[3] In the event that TTC-Ameridial claims that it cannot discern which of the numbers it called came from Marketing Webb Plaintiff anticipates the need to file a Motion to Compel against Marketing Webb seeking the production of the 365,000 leads. Once produced, Plaintiff's expert would be able to take that data set and compare it to the list of numbers that TTC-Ameridial called to generate a list of all numbers TTC-Ameridial called where the lead information came from Marketing Webb via the collegeprograms.co website. From there, the list can be refined to only include cellphone numbers. It is unclear at this time whether such motion practice against Marketing Webb will be necessary—Oliver first needs to see what information TTC-Ameridial has.

*Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("Again, the key question here is whether 'the same evidence will suffice for each member to make a prima facie showing' as to consent."); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 234-35 (S.D. Ill. 2011) ("This is not a case where the defendant purchased a list of residential telephone numbers from a vendor and proceeded to 'cold call' each number, including Vigus', to deliver prerecorded messages. In such a case, there is a likelihood that a great majority of the telephone call recipients would, like Vigus, have causes of action under the TCPA because there would be little basis to believe they had given their express consent to be called on their residential telephone lines.").

      TTC-Ameridial has indicated that Oliver consented to receive text messages when she provided information through the www.collegeprograms.co website. Showing that TTC-Ameridial called other individuals where their information was obtained via the exact same website is therefore necessary to show that a common faulty method of consent is at issue. In response to Plaintiff's subpoena, Marketing Webb has indicated that it provided approximately 365,000 leads to TTC-Ameridial where the lead information was obtained through the www.collegeprograms.co website. Plaintiff needs the list of numbers that TTC-Ameridial called from these 365,000 leads from January 2016 to June 27, 2016[4] as the owners of such numbers are members of the Class in this case. That is, for each cellphone owner whose number appears on the list their claims succeed or fail based on the exact same question: did the www.collegeprograms.co website secure prior express consent from cellphone users to be called

---

[4] Marketing Webb has indicated that the collegeprograms.co website disclosures changed in January 2016 and remained in that form through June 27, 2016. As Plaintiff was called in March 2016, Plaintiff needs TTC-Ameridial to identify the persons it called from January 2016 to June 27, 2016.

by TTC-Ameridial.[5] At this stage of the case, the data is needed to show that there exists an identifiable group that supposedly gave faulty consent to be called in the same manner.

### 2. The data is also relevant to predominance and manageability.

In a similar vein, the requested data will show that the common issue of faulty consent predominates over any individual issues as required under Rule 23(b)(3). The class list would be used in Plaintiff's anticipated Motion for Class Certification to show the Court that a single common method of consent was employed as opposed to varying methods that would necessitate individualized inquiries. *See e.g. Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765, at *11 (M.D. Fla. Apr. 27, 2015), *leave to appeal denied* (Aug. 18, 2015), *reconsideration denied in part*, No. 8:13-CV-2428-T-33TBM, 2015 WL 3605163 (M.D. Fla. June 8, 2015), *leave to appeal denied* (Aug. 18, 2015) (certification denied where "consent was obtained in a multitude of ways—such as website signups, signups at events, campaign contributions, contest submissions, online petitions, and 'offline' signups (e.g., door to door field signups)—through which individuals provided their cell phone numbers….")

Finally, the data sought in Interrogatory Nos. 7 & 14 and Request to Produce No. 36 are relevant to showing that a class action would be manageable. *See Mullins v. Direct Digital LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Oliver intends on showing the Court, via the class list, that class members can be identified, and their claims can be adjudicated, in a manageable way. It is unclear at this time whether TTC-Ameridial has a list of numbers that it called where the lead information came specifically from Marketing Webb (though its trade secret objection suggests that it does), whether that data can be stratified to isolate the calls that were made to leads that

---

[5] As a hearing on the merits/summary judgment would ultimately show, the answer, for the entire class, is an emphatic "no." The disclosures were insufficient and failed to even identify TTC-Ameridial as a party to whom consent was supposedly being given.

10

were obtained during from January 2016 to June 27, 2016, and whether TTC-Ameridial's list identifies the telephone numbers that were assigned to cellphones. Complete responses to Interrogatory Nos. 7 & 14 and Requests to Produce No. 36 will reveal the answers to these questions as well as the extent of the information that may be needed from Marketing Webb.

Accordingly, there can be little question that the class list information sought is relevant to certification issues. As explained next, such data is not shielded from disclosure by TTC-Ameridial's objections based on supposed trade secret protection.

### B. Defendant's trade secret objections are unfounded and should be overruled.

Notwithstanding the relevance of the class list, Ameridial objects that such information is protected from disclosure as trade secrets. This reasoning falls apart. Under Illinois law:

> 'Trade secret' means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. Ann. 1065/2.

While Ameridial may or may not be able to show that the phone numbers and other contact information for people it called in an effort to sell educational services meets the definition of a "trade secret" —it is presently unclear how others would derive economic value from re-calling such people to offer them the same services—that does not end the inquiry. Rather, the sensitive nature of the information requested "cannot be enough in itself to justify Defendant's refusal to produce the responsive documents sought by the relevant requests." *1221122 Ontario Ltd. v. TCP Water Sols., Inc.*, No. 10 C 4942, 2011 WL 2516531, at *4–5

11

(N.D. Ill. June 23, 2011) (quoting *JAB Distrib., L.L. C. v. London Luxury, L.L.C.,* No. 09–CV–5831, 2010 WL 4008193 at *3 (N.D. Ill. 2010)). As Judge St. Eve has explained:

> In fact, it is well settled that "[t]here is no absolute privilege to protect trade secrets from disclosure during the discovery process." *In re Sealed Air Corp.,* 220 F.R.D. 452, 453 (D.S.C.2004); *see also Iosello v. Lawrence,* No. 03–CV–987, 2004 WL 442609, at *1 (N.D.Ill. Mar. 5, 2004) ("[C]onfidential proprietary information is discoverable under most circumstances, because the Court can safeguard its confidentiality by entering a protective order.); *Feature Films Servs., Inc. v. Arts & Entm't Network Corp.,* No. 91–CV–459, 1991 WL 290677, at *1 (N.D.Ill. Jan.13, 1991) ("The normal and expected reluctance of business firms to disclose sales information, however, is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors.").

*1221122 Ontario Ltd.*, No. 10 C 4942, 2011 WL 2516531, at *4–5 (N.D. Ill. June 23, 2011).

Here, even if TTC-Ameridial is able to show that the information is a protected trade secret, the Court can readily safeguard such information through a reasonably worded confidentiality or protective order. Yet when Plaintiff's counsel proposed such an order, defendant stood on its refusal to produce the information. (*See* Woodrow Decl.) To be clear, such an order could include an "attorneys eyes only" provision for highly sensitive information, together with language requiring that any filing of the contact information be done under seal. *1221122 Ontario Ltd.*, No. 10 C 4942, 2011 WL 2516531, at *4–5 (N.D. Ill. June 23, 2011) ("The Court believes that such a provision is necessary to 'give sufficient protection' to the parties' trade secrets during the discovery process") (citing *Motorola, Inc. v. Lemko Corp.,* No. 08–CV–5427, 2010 WL 2179170, at *4–5 (N.D. Ill. June 1, 2010); *Inter–Med., Inc. v. ASI Med., Inc.,* No. 09–CV–383, 2010 WL 2679992, at *1–3 (E.D. Wis. July 1, 2010); *Layne Christensen Co. v. Purolite Co.,* No. 09–2381, 2010 WL 3001744, at *5–6 (D. Kan. July 28, 2010); *In re Sealed Air Corp.,* 220 F.R.D. at 453–54.) Indeed, Plaintiff attaches to this Motion to Compel a

draft proposed protective order that should alleviate any supposed trade secret concerns. (*See* Ex. D.)

In short, that the data Plaintiff requests constitutes protected trade secrets is unclear. Nevertheless, Plaintiff proposes a confidentiality order to protect such information from disclosure outside this proceeding.

## IV. CONCLUSION

Plaintiff seeks information needed to help her demonstrate to the Court that there exists an ascertainable group of cellphone users who were called by TTC-Ameridial after they submitted their information to Marketing Webb via the www.collegeprograms.co website, that these consumers have claims that feature common issues of consent that predominate over individual issues, and that a class action here would be manageable. Defendant's trade secret objections are not well supported, but even if they were a protective order would act to ensure that the information is not disclosed outside the litigation and is filed only under seal. As such, the Court should overrule TTC-Ameridial's objections and grant this Motion to Compel.

WHEREFORE, Plaintiff respectfully requests that her Motion to Compel be granted and for such additional relief as the Court deems necessary and just.

    \*        \*        \*        \*        \*

Dated: November 22, 2016

**KRISTINA OLIVER** individually and on behalf of classes of similarly situated individuals,

By: /s/ Steven L. Woodrow
    One of Plaintiffs' Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC

        3900 East Mexico Avenue, Ste. 300
        Denver, Colorado 80210
        Tel: 720.213.0675
        Fax: 303.927.0809

        Stefan Coleman, Esq.
        law@stefancoleman.com
        LAW OFFICES OF STEFAN COLEMAN, P.A.
        201 S Biscayne Blvd, 28th Floor
        Miami, Florida 33131
        Tel: 877.333.9427
        Fax: 888.498.8946

        *pro hac vice

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on November 22, 2016, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.

                /s/ Steven L. Woodrow