## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Kristina Oliver, individually and on
behalf of all others similarly situated

          Plaintiff,

vs.

TTC-AMERIDIAL, LLC, and
AMERIDIAL, INC.

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.  1:16-cv-05177

**MEMORANDUM IN SUPPORT OF
DEFENDANTS TTC-AMERIDIAL, LLC
AND AMERDIAL, INC.'S MOTION
<u>FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES ............................................................................................... 3

I.     INTRODUCTION ...................................................................................................... 6

II.    SUMMARY OF THE CASE ..................................................................................... 7

III.   STATEMENT OF FACTS ........................................................................................ 7

IV.   STANDARD OF REVIEW ..................................................................................... 10

IV.   ARGUMENT ........................................................................................................... 11

   A.  **Defendants are entitled to summary judgment because Oliver lacks standing and this Court lacks subject-matter jurisdiction.** ....................................................... 11

      1.  **Oliver lacks constitutional standing as she has not suffered an injury-in-fact as required by Article III.** ......................................................................... 11

      2.  **Oliver has provided no evidence of a violation of her privacy interests, and therefore an injury-in-fact, from receipt of the calls she requested from TTC-Ameridial.** ............................................................................................... 12

      3.  **Oliver has provided no evidence that she has suffered actual damages from receipt of the calls she requested from TTC-Ameridial.** ............................. 13

      4.  **Oliver's alleged damages are de minimis and too generalized to establish an injury-in-fact as required by Article III.** .................................................. 14

   B.  **Defendants are entitled to summary judgment because TTC-Ameridial complied with TCPA requirements to make telemarketing calls.** ................................................. 17

      1.  **History of the TCPA** ............................................................................... 17

      2.  **TTC-Ameridial only made telemarketing calls to Oliver after she provided her prior express written consent, in compliance with the TCPA.** .......... 19

   C.  **Defendants are entitled to summary judgment as to Ameridial because Ameridial cannot be held liable for the calls made by TTC-Ameridial.** ....................................... 21

      1.  **Ameridial did not make the alleged calls and Oliver impermissibly lumps Defendants together.** ............................................................................... 21

      2.  **Oliver provides no evidence to support her theory that Ameridial is liable for TTC-Ameridial's telemarketing calls.** ................................................. 24

      a.  **Oliver has not shown this Court should pierce the corporate veil.** ...................... 24

      b.  **Ameridial cannot be held vicariously liable for the calls made by TTC-Ameridial.** ............................................................................................... 27

VI.   CONCLUSION ....................................................................................................... 29

CERTIFICATE OF SERVICE ........................................................................................ 32

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AFGE, Local 2119 v. Cohen*
  171 F.3d 460 (7th Cir. 1999) ................................................ 16
*Alpert v. Bertsch*
  601 N.E.2d 1031 (Ill. App. Ct. 1992) ..................................... 24
*Anderson v. Liberty Lobby Inc.*
  477 U.S. 242 (1986) ......................................................... 11
*Atkins v. City of Chi.*
  631 F.3d 823 (7th Cir. 2011) ............................................... 28
*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ......................................................... 23
*Bennett v. Spear*
  520 U.S. 154 (1997) ......................................................... 16
*Bensman v. United States Forest Serv.*
  408 F.3d 945 (7th Cir. 2005) ............................................... 16
*C M Corp. v. Oberer Dev. Co.*
  631 F.2d 536 (7th Cir. 1980) ............................................... 24
*Cellco P'ship v. Plaza Resorts Inc.*
  No. 12-cv-81238, 2013 U.S. Dist. LEXIS 139337 (S.D. Fla. Sept. 27, 2013) ...... 16, 22, 23, 28
*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ......................................................... 11
*Hystro Prods., Inc. v. MNP Corp.*
  18 F.3d 1384 (7th Cir. 1994) ............................................... 24, 26
*In re DISH Network, LLC*
  28 FCC Rcd 6574 (2013) ..................................................... 27, 29
*In re marchFIRST Inc.*
  589 F.3d 901 (7th Cir. 2009) ............................................... 28
*Jacobson v. Buffalo Rock Shooters Supply, Inc.*
  664 N.E.2d 328 (Ill. App. Ct. 1996) ...................................... 24
*Joseph v. Bernstein*
  612 F. App'x 551 (11th Cir. 2015) ......................................... 22
*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992) ......................................................... 11
*Mainstreet Org. of Realtors v. Calumet City*
  505 F.3d 742 (7th Cir. 2007) ............................................... 11
*Mauer v. Am. Intercontinental Univ., Inc.*
  No. 16-cv-01473, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016) ..................... 28, 29
*Mey v. Monitronics Int'l, Inc.*
  959 F. Supp. 2d 927 (N.D. W. Va. 2013) ................................... 29
*N. Ill. Gas Co. v. Total Energy Leasing Corp.*
  502 F. Supp. 412 (N.D. Ill. 1980) ........................................ 25
*Nw. Corp. v. Gabriel Mfg. Co.*
  No. 95-cv-02004, 1996 U.S. Dist. LEXIS 19275 (N.D. Ill. Dec. 10, 1996) .......................... 25
*Oliver v. DirecTV, LLC*

No. 14-cv-7794, 2015 U.S. Dist. LEXIS 47964 (N.D. Ill. Apr. 13, 2015) ............................ 22

*Pederson v. Paragon Pool Enters.*
574 N.E.2d 165 (Ill. App. Ct. 1991) ........................................................................... 26

*Pisciotta v. Old Nat'l Bancorp*
499 F.3d 629 (7th Cir. 2007) ....................................................................................... 23

*Romero v. Dep't Stores Nat'l Bank*
199 F. Supp. 3d 1256 (S.D. Cal. 2016) ............................................................... 14, 15

*Satterfield v. Simon & Schuster*
569 F.3d 946 (9th Cir. 2009) ....................................................................................... 20

*Sea-Land Servs., Inc. v. Pepper Source*
941 F.2d 519 (7th Cir. 1991) ................................................................................. 25, 26

*Shostack v. Diller*
No. 15-cv-02255, 2015 U.S. Dist. LEXIS 123777 (S.D.N.Y. Sept. 16, 2015) .......... 26

*Smith v. Aitima Med. Equip., Inc.*
No. 16-cv-00339, 2016 U.S. Dist. LEXIS 113671 (C.D. Cal. July 29, 2016) ............ 15

*Spartech Corp. v. Opper*
890 F.2d 949 (7th Cir. 1989) ....................................................................................... 24

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540 (2016) ................................................................................................. 12

*Stoops v. Wells Fargo Bank*, N.A.
2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016) ................................. 12, 16, 17

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*
No. 15-cv-05182, 2016 U.S. Dist. LEXIS 104234 (N.D. Ill. Aug. 8, 2016) .............. 12

*United States v. Diebold, Inc.*
369 U.S. 654 (1962) ..................................................................................................... 11

*Urban Elevator Serv., LLC v. Stryker Lubricant Distribs., Inc.*
No. 15-cv-02128, 2015 U.S. Dist. LEXIS 149682 (N.D. Ill. Nov. 4, 2015) .............. 22

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
454 U.S. 464 (1982) ..................................................................................................... 16

*Van Dorn Co. v. Future Chem. & Oil Corp.*
753 F.2d 565 (7th Cir. 1985) ................................................................................. 24, 25

*Wachovia Sec., LLC v. Neuhauser*
528 F. Supp. 2d 834 (N.D. Ill. 2007) .......................................................................... 25

*Weissmann v. Carroll*
No. 02-cv-04303, 2004 U.S. Dist. LEXIS 5370 (N.D. Ill. Mar. 31, 2004) ............... 11

*Winner v. Kohl's Dep't Stores, Inc.*
No. 16-cv-01541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017) ...... 13, 19

*Zarichny v. Complete Payment Recovery Servs.*
80 F. Supp. 3d 610 (E.D. Pa. 2015) ............................................................................ 27

## Statutes

15 U.S.C. § 7006 ..................................................................................................... 18, 19
47 U.S.C. § 227 .................................................................................................... passim

## Other Authorities

68 Fed. Reg. 44144 (July 25, 2003) ................................................................................ 21
73 Fed. Reg. 51164 (Aug. 29, 2008) ............................................................................... 18

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*

   27 FCC Rcd 1830 (Feb. 15, 2012) ................................................................. 18

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*

   30 FCC Rcd. 7961 (July 10, 2015) ............................................................. 12

Pub. L. No. 102-243, 105 Stat. 2394 ............................................................... 17

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 10

Fed. R. Civ. P. 8 ........................................................................... 22, 23, 28, 29

**Regulations**

47 C.F.R. § 64.1200 .................................................................................. 18, 19

**Constitutional Provisions**

U.S. Const. art. III ................................................................................... passim

# I. INTRODUCTION

In ruling on this motion for summary judgment, this Court need address only the following issues:

(1)     A plaintiff must satisfy both constitutional and prudential standing before seeking redress in federal court. Has Kristina Oliver ("Oliver") suffered an injury-in-fact under Article III of the Constitution to demonstrate constitutional standing? Are her interests within the zone of interests intended to be protected by the Telephone Consumer Protection Act ("TCPA") to satisfy prudential standing?

(2)     The TCPA allows telemarketing calls to a person's cell phone with prior express written consent. TTC-Ameridial, LLC ("TTC-Ameridial") made telemarketing calls to Oliver after she provided her prior express written consent. Should this Court dismiss Oliver's claim for violations of the TCPA?

(3)     While Ameridial, Inc. ("Ameridial") did not make the telemarketing calls, Oliver alleges Ameridial is still liable based on its relationship to TTC-Ameridial. Should this Court dismiss Ameridial because Oliver fails to provide evidence sufficient to find Ameridial liable for the alleged unlawful actions of TTC-Ameridial?

On the first issue, Oliver lacks constitutional and prudential standing because she alleges nothing more than a bare procedural violation of the TCPA, divorced from any concrete harm. Nor can she satisfy the injury-in-fact requirement of Article III. The TCPA was never intended to allow damages to plaintiffs who request telemarketing calls, like Oliver requested from TTC-Ameridial. As such, Oliver's interests are not within the zone of interests intended to be protected by the statute.

This Court should also dismiss Oliver's claim because TTC-Ameridial only made calls to Oliver after she provided her prior express written consent in compliance with the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Finally, this Court should dismiss the case against Ameridial because Ameridial cannot be held liable for the telemarketing calls made by TTC-Ameridial. Oliver impermissibly lumps Defendants together, fails to allege facts specific to Ameridial, provides no evidence to suggest

there was an agency relationship between TTC-Ameridial and Ameridial, and fails to show that Ameridial should be liable for TTC-Ameridial's corporate actions.

As there is no genuine dispute of material fact, Defendants are entitled to judgment as a matter of law.

## II.    SUMMARY OF THE CASE

Oliver alleges Defendants violated the TCPA by making unsolicited telemarketing calls to her and putative class members' cell phones.  Dkt. No. 1, ¶¶ 36-39, 42-45.  She claims these calls were made with an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice without her prior express written consent.  *Id.*  Oliver alleges she never provided Defendants with consent to call her and never had prior dealings or relationship with them.  *Id.* at ¶¶ 16, 26. But TTC-Ameridial only made calls to Oliver after she opted-in on March 25, 2016 at http://collegeprograms.co and provided her prior express written consent to receive calls.  Dkt. No. 5, ¶¶ 16, 26.  Ameridial has never made any calls to Oliver or putative class members.  Def. Ameridial's Resp. to Pl.'s First Set of Interrogs. Nos. 1, 7, attached hereto as Exhibit A.

## III.    STATEMENT OF FACTS

1.     TTC-Ameridial is an Ohio Limited Liability Company formed on August 11, 2014. *See* Articles of Organization of TTC-Ameridial, attached hereto as Exhibit B.

2.     TTC-Ameridial provides telemarketing and lead generation services for education-related businesses and makes telephone calls on their behalf.  Dkt. No. 5, ¶ 2.

3.     Ameridial is an Ohio corporation incorporated on July 6, 1987.  *See* Articles of Incorporation of Ameridial, attached hereto as Exhibit C.

4.     Ameridial does not provide telemarketing or lead generation services for education-related businesses.  *See* Dkt. No. 5.

5.     Kristina Oliver is a student at the University of New Orleans.  Kristina Oliver Dep. 11:22-23, attached hereto as Exhibit D.

6.     Oliver opted-in to receive telemarketing calls from TTC-Ameridial on March 25, 2016, at http://collegeprograms.co using IP address 98.163.223.58.  Affidavit of Ken Webb, ¶ 9, (TTC-Ameridial Oliver 0001-0003), attached hereto as Exhibit E.

7.     Oliver admits she provided the following information at http://collegeprograms.co:

> Kristina Oliver
> kristina-oliver@hotmail.com
> 720-940-4309
> 112 Holy Cross Place
> Kenner, LA 70065

Exhibit D, 83:9—84:21.

8.     Oliver checked a box and clicked "submit" in immediate proximity to the specific consent language at http://collegeprograms.co, as follows:

> By checking this box, I expressly agree to receive marketing phone calls, text or SMS messages, or emails, from online-edu-help.com or *Marketing Partners at any phone number I provide, even if the number is a wireless number or on any federal or state do-not-call-list. I understand that such calls may be placed using automatic dialing equipment or pre-recorded messages, and that I am not required to check this box to purchase any goods or services.

Exhibit E, ¶¶ 7-8.

9.     Oliver expressly agreed to receive telemarketing calls on her cell phone from online-edu-help.com or its marketing partners.  Exhibit D, 87:1-14.

10.     After providing her information at http://collegeprograms.co, Oliver expected to get calls about furthering her education.  *Id.* at 105:18-24.

11.     Oliver "want[ed] some more information about college, since [she's] graduating so soon."  *Id.* at 16:15-17.

12.     Oliver alleges she received eight calls from Defendants.  Pl.'s Resp. to Defs.' First Set of Interrogs. No. 1, attached hereto as Exhibit F.

13.     Oliver believes she received calls from TTC-Ameridial and Ameridial, but she never spoke to anyone.  Exhibit D, 22:12-20.

14.     The caller ID on Oliver's cell phone did not display the names of either TTC-Ameridial or Ameridial.  *Id*. at 22:21-23.

15.     Oliver did not receive any voicemail messages from the eight alleged calls.  *Id*. at 108:11—111:2.

16.     The calls did not cost Oliver any money.  *Id*. at 52:11-12.

17.     The calls did not take time away from her work.  *Id*. at 52:13-15.

18.     Oliver says she is not seeking damages.  *Id*. at 44:17-19.

19.     Ameridial has never made any calls to Oliver or putative class members.  Exhibit A, Nos. 1, 7.

20.     Ameridial has never directly participated in, directed, authorized, or ratified any calls made by TTC-Ameridial.  Dkt. No. 5, ¶ 9.

21.     Ameridial has never received any benefits from or approved of any calls made by TTC-Ameridial.  *Id*.

22.     Ameridial has never established or approved TTC-Ameridial's policies and practices, overseen operations, or been directly involved in its business practices.  *Id*.

23.     Third party TTC-Marketing Solutions, Inc. assigned all of its assets, including the d/b/a online-edu-help.com to TTC-Ameridial on September 29, 2014.  *See* Assignment and Bill of Sale (TTC-Ameridial Oliver 0114-0122), attached hereto as Exhibit G.

24. TTC-Ameridial purchased all assets of TTC-Marketing Solutions, Inc. on September 30, 2014, including the d/b/a online-edu-help.com. *See* Asset Purchase Agreement (TTC-Ameridial Oliver 0084-0101), attached hereto as Exhibit H; Mary Shanley Dep. 47:13-16, attached hereto as Exhibit I.

25. TTC-Ameridial filed a d/b/a application for online edu help with the State of Illinois on September 3, 2015. Application to Adopt, Change, Cancel or Renew an Assumed Name (TTC-Ameridial Oliver 0102), attached hereto as Exhibit J.

26. Online-edu-help.com is a d/b/a of TTC-Ameridial. Def. TTC-Ameridial's Resp. to Pl.'s First Set of Interrogs. No. 2, attached hereto as Exhibit K; Exhibit I, 47:13-16.

27. Online EDU help is an assumed name of TTC-Ameridial. Exhibit I, 47:1-3.

28. The State of Illinois' website shows online edu help is an active d/b/a for TTC-Ameridial as of November 11, 2016. LLC File Detail Report (TTC-Ameridial Oliver 0103-0104), attached hereto as Exhibit L.

29. TTC-Ameridial uses Online EDU Help and online-edu-help.com interchangeably. Exhibit I, 68:7-10.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Weissmann v. Carroll*, No. 02-cv-04303, 2004 U.S. Dist. LEXIS 5370, at *5-6 (N.D. Ill. Mar. 31, 2004) (citing *Anderson*, 477 U.S. at 248).

The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

## IV. ARGUMENT

### A. Defendants are entitled to summary judgment because Oliver lacks standing and this Court lacks subject-matter jurisdiction.

#### 1. Oliver lacks constitutional standing as she has not suffered an injury-in-fact as required by Article III.

Article III requires that a plaintiff must have suffered an injury-in-fact (1) that is "concrete and particularized" and "actual or imminent," and not merely "conjectural or hypothetical"; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely, "as opposed to merely speculative," that a favorable decision by the court will redress the injury for a plaintiff to have standing to bring suit. *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 751 (7th Cir. 2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff bears the burden of establishing constitutional standing. *Id.*

For an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The injury-in-fact must also be "concrete" and "real," and "not abstract." *Id.* at 1555-56. A plaintiff does not automatically satisfy

the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  *Id*. at 1549.

### 2. Oliver has provided no evidence of a violation of her privacy interests, and therefore an injury-in-fact, from receipt of the calls she requested from TTC-Ameridial.

In *Stoops v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016), the court relied heavily on the history and purpose of the TCPA and held that a class action plaintiff lacked Article III standing to assert her claim because she was not a member of the class that the TCPA was designed to protect and did not suffer the type of harm that the TCPA was designed to prevent.  *Id*. at *25-27 (citing *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7979-80 (July 10, 2015)).

It noted that district courts had previously held that "a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls," but the facts and circumstances showed that Wells Fargo Bank's call did not adversely affect Stoop's privacy rights the TCPA intended to protect.  *Id*. at *34.  Because the plaintiff admitted that her purpose in using the cell phones was to file TCPA lawsuits, the calls did not constitute "the nuisance, invasion of privacy, cost, and inconvenience from which Congress intended to protect consumers."  *Id*.

Relying on *Stoops*, the Northern District of Illinois has similarly agreed that not all TCPA class action plaintiffs suffer an injury-in-fact or are within the zone of interests protected by the statute.  *See Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-cv-05182, 2016 U.S. Dist. LEXIS 104234 (N.D. Ill. Aug. 8, 2016) (dismissing with prejudice, as plaintiff lacked statutory standing as it failed to allege an interest with which the TCPA is concerned—privacy invasion, nuisance, public safety threat, and/or the shifting of costs based on unwelcome robocalls).

This Court must also reject Oliver's argument that she suffered an injury-in-fact, because her privacy interests were not violated as alleged in the complaint. *See* Dkt. No. 1, ¶ 4. Oliver is not a member of any class that the TCPA was designed to protect and she did not suffer the type of harm that the TCPA was designed to prevent. The TCPA intended to protect consumers from *unsolicited* telemarketing calls, but Oliver admits in her deposition that she expressly agreed to receive telemarketing calls, expected to receive the calls and *wanted* the calls. Exhibit D, 87:1-14; 105:18-24; 16:15-17. She also admits the calls did not cost her any money or take away from her work. *Id.* at 52:11-12; 52:13-15.

Accordingly, Oliver has provided no evidence of a violation of her privacy interests, and therefore an injury-in-fact, from her receipt of solicited calls from TTC-Ameridial. *See Winner v. Kohl's Dep't Stores, Inc.*, No. 16-cv-01541, 2017 U.S. Dist. LEXIS 131225, at *18 (E.D. Pa. Aug. 17, 2017) ("Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted …."). Thus, Oliver has failed to meet her burden of establishing constitutional standing under the TCPA.

### 3. Oliver has provided no evidence that she has suffered actual damages from receipt of the calls she requested from TTC-Ameridial.

Oliver admits multiple times during her deposition that she has not suffered damages from the calls she requested and subsequently received from TTC-Ameridial:

Q:    Were you injured by that call?
A:    No.
Q:    Were you injured by the second call?
A:    No.

Exhibit D, 20:25—21:3.

Q:    So how are you actually harmed by those calls? You weren't, I mean, cut --
A:    No.

Q:      -- or bruised or anything?
A:      No, I was not.
Q:      Did it cost you any money?
A:      No.
Q:      Did you take time from your work to have to talk to the people on the phone?
A:      No.
Q:      Okay. What actual harm are you alleging that you received?
A:      Just that I believe that the company could have done better in contacting me instead of them repeatedly having calls. They could have just called me and if I didn't answer then leave a voice mail with a call back number or an email where I can contact them.

*Id*. at 52:6-23.  Nor is Oliver seeking damages in this case:

Q:      What amount of damages are you seeking, in this case?
A:      No damages.

*Id*. at 44:17-19.

Oliver has failed to provide any evidence to support her allegation that she suffered actual damages.  She admits that she has not been injured by the calls she requested and received from TTC-Ameridial.  She admits she intends to make no claim for damages.  As a result, this case should be dismissed for lack of constitutional standing.

  **4. Oliver's alleged damages are de minimis and too generalized to establish an injury-in-fact as required by Article III.**

Oliver may argue that she has constitutional standing under Article III because she has suffered generalized damages, as the calls were a "nuisance" that "distracted" her from her studies. *See* Exhibit D, 114:1-13.  But case law establishes that minimal generalized damages are insufficient to establish an injury-in-fact.

For example, in *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016), the court held that the plaintiff lacked Article III standing in a TCPA case concerning 290 calls to her cell phone, only three of which she answered, because "Congress's finding that the proliferation of unwanted calls from telemarketers causes harm does not mean that the receipt

of one telephone call that was dialed using an ATDS results in concrete harm." *Id.* at *5. *See Smith v. Aitima Med. Equip., Inc.*, No. 16-cv-00339, 2016 U.S. Dist. LEXIS 113671, at *4 (C.D. Cal. July 29, 2016) ("Any depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call … is too *de minimis* to satisfy the standing doctrine's core aim of improving judicial decision-making by ensuring that there is a specific controversy before the court …."). *See also Supply Pro Sorbents, LLC v. RingCentral, Inc.,* No. 16-cv-02113, 2016 U.S. Dist. LEXIS 140033, at *8 (N.D. Cal. Oct. 7, 2016).

Similarly, the receipt of these requested calls did not result in concrete harm to Oliver and are too *de minimis* to satisfy the standing doctrine's core aim to ensure there is a specific controversy before the court. While Oliver alleges she received eight calls from Defendants, she never spoke to anyone. Exhibit F, No. 1; Exhibit D, 22:12-20. Nor did she receive any voicemail messages from the eight alleged calls. Exhibit D, 108:11—111:2. Indeed, Oliver has provided no evidence that the eight unidentified calls were from Defendants at all. And unlike the plaintiffs in *Romero* and *Smith* who received *unsolicited* calls, Oliver expressly agreed to receive telemarketing calls, expected to receive the calls and *wanted* the calls. *Id*. at 87:1-14; 105:18-24; 16:15-17. When asked during her deposition about the harms she has suffered, Oliver admitted the calls did not cost her any money or take away from her work. *Id*. at 52:11-12; 52:13-15. She could not allege any harms and could only say that she believed the company could have done a better job contacting her. *Id*. at 52:18-23. The record establishes that Oliver did not suffer an injury-in-fact sufficient to support Article III standing. On this basis alone, Defendants are entitled to summary judgment.

Even if Oliver has suffered an injury-in-fact, she does not satisfy the prudential component required by the doctrine of standing. *Valley Forge Christian Coll. v. Ams. United for Separation*

*of Church & State*, 454 U.S. 464, 474 (1982).  Prudential standing requires that a plaintiff's grievance fall within the zone of interests the statute or constitutional guarantee protects or regulates.  *Bensman v. United States Forest Serv.*, 408 F.3d 945, 963 n.23 (7th Cir. 2005) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).  The "zone of interest" test "denies a right of review if a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably assumed that Congress intended to permit the suit."  *AFGE, Local 2119 v. Cohen*, 171 F.3d 460, 469 (7th Cir. 1999) (citing *Clarke v. Securities Industry Assn.,* 479 U.S. 388, 399 (1987)).

In *Stoops,* the court held that the plaintiff's interests were not among the sort the TCPA was specifically designed to protect, because the plaintiff purchased multiple cell phone numbers with the intent of filing TCPA lawsuits.  Finding this "got ya" activity beyond any legitimate protection, the court stated:

> Indeed, it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its "outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." Because Plaintiff does not have "the sort of interest in privacy, peace, and quiet that Congress intended to protect," the Court finds that she has failed to establish that the injury she complains of "falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for [her] complaint," ….

*Stoops*, 2016 U.S. Dist. LEXIS 82380 at *47-48 (internal citations omitted).  *See also Cellco P'ship v. Plaza Resorts Inc*., No. 12-cv-81238, 2013 U.S. Dist. LEXIS 139337, at *17, 23 (S.D. Fla. Sept. 27, 2013) (holding that the plaintiffs did not fall within the zone of interests protected by the TCPA because "they attempt[ed] to use the statute in a way not intended or contemplated by Congress" and because "[t]heir damages are not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA").

Like the plaintiff in *Stoops*, Oliver's interests are not within the zone of interests intended to be protected by the TCPA. The TCPA intended to protect consumers from *unsolicited* telemarketing calls, but Oliver admits in her deposition that she expressly agreed to receive telemarketing calls, expected to receive the calls and *wanted* the calls. Exhibit D, 87:1-14; 105:18-24; 16:15-17. She also admits the calls did not cost her any money or take away from her work. *Id*. at 52:11-12; 52:13-15. TTC-Ameridial's reasonable business response to Oliver, a consumer who requested information on educational opportunities—and its attempt to speak with her about those educational opportunities—did not infringe upon any legitimate privacy interest of Oliver. Neither Congress nor this Court could consider such calls of the "vexatious and intrusive nature" subject to redress by the TCPA.

This conduct does not invoke "the sort of interest in privacy, peace, and quiet that Congress intended to protect" and fails to establish an injury that falls within the zone of interests protected by the TCPA. Because Oliver lacks constitutional and prudential standing, there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

**B.**     **Defendants are entitled to summary judgment because TTC-Ameridial complied with TCPA requirements to make telemarketing calls.**

**1.**     **History of the TCPA**

Congress passed the TCPA in 1991 to protect consumers from invasions of privacy caused by *unsolicited* telephone calls or faxes. *See* Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227).

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone …." 47 U.S.C. § 227(b)(1)(A)(iii).

In 2012, the Federal Communications Commission ("FCC") revised the TCPA with respect to certain advertisement or telemarketing calls made to cell phones. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1841 (Feb. 15, 2012); 47 C.F.R. § 64.1200(a)(2).

Effective October 16, 2013, the FCC introduced a heightened prior express written consent requirement for calls using an ATDS made to a cell phone that include or introduce an advertisement or constitute telemarketing. *See* 47 C.F.R. § 64.1200(a)(2). The statute defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." *Id*. at (f)(1). "Telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id*. at (f)(12).

Prior express written consent consists of the following elements:

- Signature of the person called (can be in electronic or digital form)[1];
- Telephone number to which the signature authorizes calls;
- Clear and conspicuous disclosure informing the person that the agreement authorizes the seller to call;
- Using an automatic telephone dialing system or an artificial or prerecorded voice; and
- Statement that the person is not required to sign the agreement as a condition of purchasing property, goods, or services.

47 C.F.R. § 64.1200(f)(8).

TTC-Ameridial does not dispute that it made telemarketing calls to Oliver, but clarifies that it only did so after she provided TTC-Ameridial her prior express written consent.

---

[1] "The E-SIGN Act defines an 'electronic signature' as 'an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record.' 15 U.S.C. § 7006(5). The Act further defines an 'electronic record' as 'a contract or other record created, generated, sent, communicated, received, or stored by electronic means.' 15 U.S.C. § 7006(4)." 73 Fed. Reg. 51164, 51181, n. 218 (Aug. 29, 2008).

## 2. TTC-Ameridial only made telemarketing calls to Oliver after she provided her prior express written consent, in compliance with the TCPA.

Oliver admits she expressly agreed to receive telemarketing calls on her cell phone from online-edu-help.com or its marketing partners and expected to get calls about furthering her education. Exhibit D, 87:1-14, 105:18-24. In doing so, Oliver provided her contact and educational information, voluntarily checked a box, and clicked "submit" in immediate proximity to the following consent language:

> By checking this box, I expressly agree to receive marketing phone calls, text or SMS messages, or emails, from online-edu-help.com or *Marketing Partners at any phone number I provide, even if the number is a wireless number or on any federal or state do-not-call-list. I understand that such calls may be placed using automatic dialing equipment or pre-recorded messages, and that I am not required to check this box to purchase any goods or services.

Exhibit E, ¶¶ 7-8.

TTC-Ameridial's consent language undeniably complies with the TCPA prior express written consent requirements, 47 C.F.R. § 64.1200(f)(8), as it includes: (1) signature of the person called[2] (checking the box, i.e. the "process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record", 15 U.S.C. § 7006(5)); (2) telephone number to which the signature authorizes calls (Oliver provided her cell phone number and acknowledged to receive contact "at any number I provide"); (3) a clear and conspicuous disclosure that the agreement authorizes the seller to call ("I expressly agree to receive marketing phone calls, text or SMS messages, or emails, from online-edu-help.com or *Marketing Partners"); (4) using an automatic telephone dialing system or an artificial or prerecorded voice

---

[2] *See Winner*, U.S. Dist. LEXIS 131225 at *21 ("We conclude that the stipulated facts also establish that Winner 'signed' the express written consent agreement in a manner permissible under the E-Sign Act. Winner's texting 'SAVE30' constituted her electronic signature affirmatively consenting to such use ….").

("I understand that such calls may be placed using automatic dialing equipment or pre-recorded messages"); and (5) statement that the person is not required to sign the agreement as a condition of purchasing property, goods, or services ("I understand … I am not required to check this box to purchase any goods or services").  Exhibit E, ¶¶ 7-8.

Because TTC-Ameridial's consent language complies with the TCPA prior express written consent requirement, Oliver may alternatively argue that while she consented to receive calls from "online-edu-help.com and *Marketing Partners", she did not provide consent to receive calls from TTC-Ameridial.  While Oliver is correct that consent is non-transferable from one seller to another, *see Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009), TTC-Ameridial is not a different seller or company.  The record establishes that online-edu-help.com is a d/b/a of TTC-Ameridial.  Exhibit K, No. 2; Exhibit I, 47:13-16.  Specifically, TTC-Ameridial purchased all assets of third party TTC-Marketing Solutions, Inc. on September 30, 2014, including the d/b/a online-edu-help.com.  *See* Exhibit H; Exhibit I, 47:13-16.  The Assignment and Bill of Sale further confirms that TTC-Marketing Solutions, Inc. assigned all of its assets, including the d/b/a online-edu-help.com to TTC-Ameridial on September 29, 2014.  *See* Exhibit G.  And more than six months before the alleged calls to Oliver, TTC-Ameridial filed a d/b/a application for Online Edu Help with the State of Illinois on September 3, 2015.[3]  *See* Exhibit J.  As of November 11, 2016, the State of Illinois' website listed Online Edu Help as an active d/b/a for TTC-Ameridial. *See* Exhibit L.

---

[3] TTC-Ameridial uses Online Edu Help and online-edu-help.com interchangeably.  Exhibit I, 68:7-10.

Even if Online Edu Help and online-edu-help.com were considered different sellers or separate entities—which they are not—the FCC has already addressed the issue of consumers' reasonable expectations in receiving telemarketing calls under the TCPA:

> affiliates fall within the established business relationship exemption only if the consumer would reasonably expect them to be included given the nature and type of goods or services offered and the identity of the affiliate. This definition offers flexibility to companies whose subsidiaries or affiliates also make telephone solicitations, but it is based on consumers' reasonable expectations of which companies will call them.

68 Fed. Reg. 44144, 44159 (July 25, 2003). A reasonable consumer would undoubtedly expect to receive a telemarketing call from Online Edu Help by requesting to receive telemarketing calls from online-edu-help.com. Oliver even said so herself. Exhibit D, 105:18-24.

It is undisputed that (1) Oliver provided her prior express written consent to receive telemarketing calls from online-edu-help.com and its marketing partners, (2) online-edu-help.com is a d/b/a of TTC-Ameridial, and (3) Oliver alleges she received calls from TTC-Ameridial on her cell phone. It is clear there was no intent to defraud by TTC-Ameridial and the mere difference in spacing and punctuation does not change the fact that online-edu-help.com is a d/b/a of TTC-Ameridial. Because TTC-Ameridial and online-edu-help.com are the same entity, TTC-Ameridial had the authority to call Oliver. To argue that Oliver's prior express written consent is invalid because TTC-Ameridial uses Online Edu Help and online-edu-help.com interchangeably is baseless. The TCPA requires no such prerequisite and Oliver cannot attempt to create one.

Defendants are entitled to summary judgment because TTC-Ameridial complied with TCPA requirements to make telemarketing calls.

**C.    Defendants are entitled to summary judgment as to Ameridial because Ameridial cannot be held liable for the calls made by TTC-Ameridial.**

**1.    Ameridial did not make the alleged calls and Oliver impermissibly lumps Defendants together.**

An element of a TCPA claim is that the defendant made a call. 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States … (A) to make any call …."). *See Oliver v. DirecTV, LLC*, No. 14-cv-7794, 2015 U.S. Dist. LEXIS 47964, at *6 (N.D. Ill. Apr. 13, 2015). But Ameridial did not make any calls to Oliver or putative class members. Exhibit A, Nos. 1, 7. In order to circumvent Ameridial's non-existent involvement, Oliver attempts to impermissibly lump Defendants together and hold them collectively liable for the calls made by TTC-Ameridial.

But a plaintiff must allege facts with respect to each defendant, and any attempt to lump defendants together in a TCPA claim should result in dismissal. *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) ("If the complaint indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8."); *see e.g., Urban Elevator Serv., LLC v. Stryker Lubricant Distribs., Inc.*, No. 15-cv-02128, 2015 U.S. Dist. LEXIS 149682, at *5 (N.D. Ill. Nov. 4, 2015) (dismissing TCPA case where that plaintiff, just like Oliver herein, lumped all "Defendants" together as having "sent the fax").

In *Cellco*, plaintiff alleged the defendants were distinct legal entities, but failed to explain what theory of liability Cellco was proceeding under. 2013 U.S. Dist. LEXIS 139337 at *20. While the complaint stated that the entities were "affiliated" and "act[ed] in concert" with each other, the court found the statements to be too conclusory. *Id*. The court dismissed the TCPA claim because "the Complaint impermissibly lumps Defendants together." *Id*.

Like *Cellco*, Oliver impermissibly lumps Ameridial and TTC-Ameridial together and fails to comply with Rule 8(a). Oliver contends that Ameridial is liable for calls made by TTC-Ameridial that allegedly violate the TCPA based on a conclusory recitation of the TCPA elements:

By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Class actual harm and cognizable legal injury ….

Dkt. No. 1, ¶ 4.

Defendants utilized (and continue to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of promoting their services, often times calling consumers on their cellular phones.

*Id*. at ¶ 15.

Defendants knowingly made (and continue to make) telemarketing calls without the prior express consent of the call recipients and knowingly continue to call them after requests to stop. As such, Defendants have not only invaded the personal privacy of Plaintiff and members of the putative Class, they have also intentionally and repeatedly violated the TCPA.

*Id*. at ¶ 21. *See also* ¶¶ 3, 5, 11, 12, 16-18, 20, 25-27, 29-34, 36-40, and 42-47.

While Rule 8(a)(2) only requires Oliver to make a short and plain statement of her claim, the complaint's factual allegations do not raise a right of relief above the speculative level. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Oliver does not provide sufficient factual allegations as to how or why she believes Ameridial made calls to her cell phone. Oliver does not allege that the caller identified as being from Ameridial. Nor could she. Oliver admits that she never spoke to anyone. Dkt. No. 1, ¶ 23. She does not allege that the caller ID identified Ameridial or listed a number that could be traced back to Ameridial. *Id*. at ¶¶ 24-25. Although Oliver alleges only that she received calls from "unavailable" numbers and the callers hung up, she concludes that this is sufficient to plead that Ameridial is liable for violations of the TCPA. *Id*.

Because Oliver impermissibly lumps Defendants together and fails to allege facts specific to Ameridial, Defendants' motion for summary judgment should be granted, as there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

2. **Oliver provides no evidence to support her theory that Ameridial is liable for TTC-Ameridial's telemarketing calls.**

   a. **Oliver has not shown this Court should pierce the corporate veil.**

A corporation is an autonomous entity "separate and distinct from its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985). This autonomy shields parties related to a corporation from the liabilities of that corporation. *Spartech Corp. v. Opper*, 890 F.2d 949, 953 (7th Cir. 1989). Courts can, however, "pierce the corporate veil," which prevents purveyors of fraud and injustice from hiding behind the corporate form of organization. *Alpert v. Bertsch*, 601 N.E.2d 1031, 1036 (Ill. App. Ct. 1992).

It must be observed, however, that the Court's power to pierce the corporate veil "should be exercised reluctantly and cautiously." *C M Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 541 (7th Cir. 1980). Accordingly, a party seeking this remedy has the substantial burden of showing that the corporation is merely a sham which exists for the benefit of another dominating entity, its alter ego. *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996).

Illinois courts apply a two-prong test to determine whether to pierce the corporate veil: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual or other corporation no longer exist; and (2) circumstances must be that such an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994) (quoting *Van Dorn Co.*, 753 F.2d at 569-70). *See also Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991).

With respect to the first prong, Illinois courts examine the following factors: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4)

nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stockholders. *Nw. Corp. v. Gabriel Mfg. Co.*, No. 95-cv-02004, 1996 U.S. Dist. LEXIS 19275, at *32 (N.D. Ill. Dec. 10, 1996). "The court's task is to decide whether these factors, taken as a whole, demonstrate that the corporation is actually the alter ego of the individual—no one factor is determinative." *Wachovia Sec., LLC v. Neuhauser*, 528 F. Supp. 2d 834, 855 (N.D. Ill. 2007).

Oliver alleges no facts that would tend to show that TTC-Ameridial used the corporate form to perpetrate a fraud or injustice or otherwise to circumvent the law. No allegation has been made of inadequate capitalization, failure to issue stock or observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, non-functioning of other officers or directors, absence of corporate records, or whether the corporation is a mere facade for the operation of dominant stockholders. *See* Dkt. No. 1.

Oliver may argue that Ameridial is liable for the calls made by TTC-Ameridial because Jim McGeorge is the managing partner of both companies (Exhibit I, 16:22-24). But while common officers and directors are generally prerequisites to piercing the corporate veil, these factors alone are not sufficient by themselves to invoke the doctrine as "such factors are common business practice and exist in most parent and subsidiary relationships." *N. Ill. Gas Co. v. Total Energy Leasing Corp.*, 502 F. Supp. 412, 417 (N.D. Ill. 1980).

In addition to establishing sufficient unity of interest to justify piercing the corporate veil, Oliver must allege facts sufficiently demonstrating that adherence to the corporate formalities would promote injustice or fraud. The "promote injustice or fraud" test requires that, unless the Court pierces the corporate veil, "some 'wrong' beyond the creditor's inability to collect would

result." *Hystro*, 18 F.3d at 1390 (citing *Sea-Land*, 941 F.2d at 524). For instance, "some element of unfairness, something akin to fraud or deception or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Pederson v. Paragon Pool Enters.*, 574 N.E.2d 165, 158 (Ill. App. Ct. 1991).

Here, Oliver has not alleged—let alone established—sufficient facts to demonstrate that adhering to corporate formalities would promote injustice or fraud. No allegations have been made of unfairness, fraud, or deception or the existence of a compelling public interest to pierce the corporate veil. Thus, no evidence supports Oliver's theory that Ameridial is liable for TTC-Ameridial's telemarketing calls.

In the context of TCPA actions, courts have dismissed claims against parent companies and holding companies because the complaint lacked specific, factual allegations that such defendants were directly involved in the alleged telemarketing or that the subsidiary was merely an alter ego of the parent or holding company. In *Shostack v. Diller*, No. 15-cv-02255, 2015 U.S. Dist. LEXIS 123777, at *17-18 (S.D.N.Y. Sept. 16, 2015), the court dismissed the TCPA claims against the parent company because the plaintiff did not allege that parent had "any direct involvement with … facilitating the allegedly illegal telemarketing calls to his residence." The allegations also failed to satisfy "any of the elements required to pierce the corporate veil" to hold the parent liable. *Id*. at *17.

Similarly, in *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 617 (E.D. Pa. 2015), the court dismissed TCPA claims against the parent company because plaintiff's allegations that the parent "exerts full supervisory authority over [subsidiary], is intimately involved with the practices and procedures of [subsidiary], and, in fact, developed and implemented the particular collection practices used by [subsidiary]" did not state a claim, where

there were no allegations that the parent made any phone calls in violation of the TCPA nor did the complaint allege that the parent should be held liable under an alter ego or legal fiction theory.

Because Oliver has provided no evidence to this Court that justifies piercing of the corporate veil, Ameridial cannot be held liable for TTC-Ameridial's telemarketing calls.

### b. Ameridial cannot be held vicariously liable for the calls made by TTC-Ameridial.

Oliver may argue that Ameridial is vicariously liable for the telemarketing calls made by TTC-Ameridial, but this conclusion is unwarranted, because Oliver fails to provide sufficient evidence to support this claim. Nor does she even allege facts or circumstances or provide any evidence to plausibly show there is an agency relationship. *See* Dkt. No. 1.

Traditional agency principles apply to claims under the TCPA alleging one defendant is responsible for the activities of another entity. *See e.g. In re DISH Network, LLC*, 28 FCC Rcd 6574, 6584 (2013) (noting that defendants can be held vicariously liable for TCPA violations by its representatives "under a broad range of agency principles including not only formal agency, but also principles of apparent authority and ratification"). But Oliver fails to adequately plead vicarious liability in her allegation regarding Defendants' relationship:

> Upon information and belief, Defendant Ameridial directly participated in, directed, authorized, or ratified the conduct constituting the statutory violations alleged herein. Defendants both received the benefits of the calls and approved the making of such calls. On information and belief, Defendant Ameridial established and/or approved Defendant TTC Ameridial's policies and practices, oversaw operations, and was directly involved in the business practices that violated the TCPA.

*Id.* at ¶ 9. This allegation is repeated in paragraph 14.

As *Cellco* ruled, a complaint that fails to explain what theory of liability a plaintiff proceeds under is too conclusory to satisfy Rule 8(a). 2013 U.S. Dist. LEXIS 139337 at *20. *See also In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (surviving dismissal requires pleading

"some facts that suggest a right to relief that is beyond the 'speculative level.'"); *Atkins v. City of Chi.*, 631 F.3d 823, 831 (7th Cir. 2011) ("The fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it.").

Oliver does not adequately explain her theory of Ameridial's liability for calls made by TTC-Ameridial. Dkt. No. 1, ¶¶ 3, 9, 14. Her allegations in the complaint lack details about Ameridial's involvement with TTC-Ameridial. *Id.* The pleadings do not allege facts or circumstances to plausibly plead there is an agency relationship. *See* Dkt. No. 1. Nothing in the complaint alleges a formal agency between Defendants, i.e. an actual agreement or contract. Oliver similarly fails to allege that TTC-Ameridial cloaked Ameridial with the apparent authority to originate or control the content of the calls. Nor are there allegations that Ameridial had actual notice of the calls made by TTC-Ameridial and subsequently ratified those calls to further its interests.

Oliver also does not allege sufficient facts to tie Ameridial to the calls she received to adequately plead vicarious liability. In *Mauer v. American Intercontinental University, Inc.*, No. 16-cv-01473, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016), the defendants argued dismissal of a TCPA class action, as plaintiff Mauer had not adequately tied the defendants to the call she received. *Id.* at *1-2. The court denied defendants' motion because plaintiff alleged sufficient facts to demonstrate the plausibility of an agency relationship including: (1) existence of a contract between the unnamed telemarketer and the defendants; (2) the calls she received included an offer of educational services; (3) representatives offered similar educational services when an individual affiliated with Mauer called the number back; and (4) within minutes the individual received a call from defendants following a similar script. *Id.* at *8-10.

Oliver does not plead similar factual allegations and concludes only that Ameridial "directly participated in, directed, authorized, or ratified the conduct" of TTC-Ameridial and "both received the benefits of the calls and approved the making of such calls." Dkt. No. 5, ¶¶ 9, 14. The complaint does not allege a contract between Defendants, a plausible connection between Ameridial and the calls Oliver received from the content of the calls, or other information that could support Oliver's allegations to satisfy the minimum pleading standard of Rule 8(a). *Id*. Oliver also fails to specify the "direct benefits" allegedly received by Ameridial. *Id*. at ¶ 14.

Nor does Oliver allege that Ameridial is a seller. *See* Dkt. No. 5. The FCC has considered how and when a "seller" could be vicariously liable for a call made "on behalf of" the seller within the meaning of the TCPA. The FCC found that "on behalf of" liability turns on whether a telephone solicitation is made on behalf of a seller. *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927, 933 (N.D. W. Va. 2013) (citing *In re DISH Network, LLC*, 28 FCC Rcd. at 6587) ("The FCC Rule … defines the seller as the person 'on whose behalf' a telephone solicitation is made."). Oliver does not allege that TTC-Ameridial made calls soliciting the sale of goods or services on behalf of Ameridial. *See* Dkt. No. 1. Because Oliver fails to sufficiently allege that Ameridial is a seller, it cannot be held vicariously liable for calls made by TTC-Ameridial.

Finally, Oliver has not alleged that TTC-Ameridial and Ameridial are the same entity. Public records support that TTC-Ameridial and Ameridial are distinct legal entities. *See* Exhibits B and C. As distinct legal entities, Oliver cannot attribute the actions of TTC-Ameridial to Ameridial without an agency relationship, and Oliver fails to adequately plead such a relationship.

Defendants are entitled to summary judgment as to Ameridial because Ameridial cannot be held liable for the calls made by TTC-Ameridial.

**VI. CONCLUSION**

The outcome of this motion rests on the fact that Oliver lacks both constitutional and prudential standing and this case should be dismissed for lack of subject-matter jurisdiction. Oliver alleges nothing more than a bare procedural violation of the TCPA, divorced from any concrete harm, and cannot satisfy the injury-in-fact requirement of Article III. Her interests are not within the zone of interests intended to be protected by the TCPA, as TTC-Ameridial only made telemarketing calls to Oliver after she provided her prior express written consent.

Finally, this Court should dismiss the case against Ameridial because Ameridial cannot be held liable for calls made by TTC-Ameridial. Oliver impermissibly lumps Defendants together, fails to allege facts specific to Ameridial, provides no evidence to suggest there was an agency relationship between TTC-Ameridial and Ameridial, and fails to show that the corporate veil should be pierced. As there is no genuine dispute of material fact, Defendants are entitled to judgment as a matter of law.

Dated: August 28, 2017        Respectfully submitted,

    _/s/ Jeffrey S. Bunn_

LATIMER LEVAY FYOCK, LLP
Jeffrey S. Bunn, IL #3126903
55 W. Monroe St., 11th Floor
Chicago, Illinois 60603
Telephone: (312) 422-8000
Facsimile: (312) 422-8001
Email: jbunn@llflegal.com

-and-

COPILEVITZ & CANTER, LLC
William E. Raney, MO #46954 (*Pro hac vice*)
Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice*)
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000

Facsimile: (816) 472-5000
Email: braney@cckc-law.com
        kmitchell@cckc-law.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following parties via the

Court's CM/ECF electronic filing system on this 28th day of August, 2017:

WOODROW & PELUSO, LLC
Steven L. Woodrow
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com

LAW OFFICES OF STEFAN COLEMAN, P.A.
Stefan Coleman
201 S. Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Email: law@stefancoleman.com

MCCALLISTER LAW GROUP, LLC
Marc McCallister
120 North LaSalle St., Suite 2800
Chicago, IL 60602
Telephone: (312) 345-0611
Email: eme@mccallisterlawgroup.com


    /s/ William E. Raney
    William E. Raney