**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **Kristina Oliver, individually and on** | ) | |
| **behalf of all others similarly situated** | ) | **Case No.  1:16-cv-05177** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **DEFENDANTS' OPPOSITION TO** |
| **vs.** | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **CLASS CERTIFICATION** |
| **TTC-AMERIDIAL, LLC, and** | ) | |
| **AMERIDIAL, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES ......................................................................................... 3

I.   PRELIMINARY STATEMENT ........................................................................ 5

II.  BACKGROUND ................................................................................................ 6

III. ARGUMENT ...................................................................................................... 7

   A.  Oliver fails to satisfy the threshold requirements to certify a class. ............. 8

      1.  Oliver fails to prove the proposed class is ascertainable. ...................... 8

      2.  The proposed class is not certifiable because it contains members who do not have standing to sue. ................................................................................. 11

   B.  Oliver fails to satisfy the Rule 23(a) requirements to certify a class. .......... 13

      1.  Oliver fails to satisfy numerosity under Rule 23(a)(1). .......................... 13

      2.  Oliver fails to satisfy commonality under Rule 23(a)(2). ....................... 14

      3.  Oliver fails to satisfy typicality under Rule 23(a)(3). ............................ 18

      4.  Oliver fails to satisfy adequacy under Rule 23(a)(4). ............................ 20

   C.  Oliver fails to satisfy the Rule 23(b)(3) requirement to certify a class. ........ 23

      1.  Questions common to the class do not predominate over individual questions. .... 23

      2.  A class action is not a superior method to adjudicate the proposed class. .......... 25

IV.  CONCLUSION ................................................................................................ 27

CERTIFICATE OF SERVICE ................................................................................. 29

**TABLE OF AUTHORITIES**

**Cases**

*Alliance to End Repression v. Rochford*
   565 F.2d 975, 977 (7th Cir. 1977) ................................................................ 8
*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591, 613 (1997) ................................................................... 12, 24
*Blair v. Supportkids, Inc.*
   No. 02-cv-00632, 2003 U.S. Dist. LEXIS 6640, at *12 (N.D. Ill. Apr. 17, 2003) ................ 8
*Bridgeview Health Care Ctr., Ltd. v. Clark*
   No. 09-cv-05601, 2011 U.S. Dist. LEXIS 113609, at *6 (N.D. Ill. Sep. 30, 2011) ............. 9
*Brodsky v. Humanadental Ins. Co.*
   No. 10-cv-03233, 2017 U.S. Dist. LEXIS 137608, at *27 (N.D. Ill. Aug. 28, 2017) ....... 17, 25
*Buonomo v. Optimum Outcomes, Inc.*
   301 F.R.D. 292, 296 (N.D. Ill. 2014) ...................................................... 18
*CE Design Ltd. v. King Architectural Metals, Inc.*
   637 F.3d 721, 723 (7th Cir. 2011) ...................................................... 7, 22
*Comcast Corp. v. Behrend*
   133 S. Ct. 1426, 1432 (2013) ........................................................ 7, 8, 24
*Culver v. City of Milwaukee*
   277 F.3d 908, 911 (7th Cir. 2002) ..................................................... 22, 23
*Dolmage v. Combined Ins. Co. of Am.*
   No. 14-cv-03809, 2017 U.S. Dist. LEXIS 67555, at *25-26 (N.D. Ill. May 3, 2017) ........... 15
*Ellis v. Elgin Riverboat Resort*
   217 F.R.D. 415, 430 (N.D. Ill. 2003) ...................................................... 22
*Espejo v. Santander Consumer USA, Inc.*
   No. 11-cv-08987, 2016 U.S. Dist. LEXIS 142259, at *24 (N.D. Ill. Oct. 14, 2016) ............... 9
*Foday v. Air Check, Inc.*
   No. 15-cv-10205, 2017 U.S. Dist. Lexis 95183, at *8-9 (N.D. Ill. June 21, 2017) ............... 15
*Fox v. Riverview Realty Partners*
   No. 12-cv-09350, 2014 U.S. Dist. LEXIS 55260, at *9 (N.D. Ill. Apr. 22, 2014) ............... 14
*G.M. Sign, Inc. v. Brink's Mfg. Co.*
   No. 09-cv-05528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. Jan. 25, 2011) ...................... 24
*Gen. Tel. Co. of the Sw. v. Falcon*
   457 U.S. 147, 161 (1982) ............................................................... 8, 21
*Gesell v. Commonwealth Edison Co.*
   216 F.R.D. 616, 624 (C.D. Ill. 2003) ...................................................... 19
*Gomez v. St. Vincent Health, Inc.*
   649 F.3d 583, 592 (7th Cir. 2011) ........................................................ 20
*Guillory v. Am. Tobacco Co.*
   No. 97-cv-08641, 2001 U.S. Dist. LEXIS 3353, at *11 (N.D. Ill. Mar. 19, 2001) ................. 24
*Horne v. Flores*
   557 U.S. 433, 445 (2009) ................................................................ 11
*In re AT&T Mobility Wireless Data Servs. Sales Litig.*
   270 F.R.D. 330, 343 (N.D. Ill. 2010) ...................................................... 21
*In re Rail Freight Fuel Surcharge Antitrust Litig.*
   - *MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013) ...................................... 12

*Jamison v. First Credit Servs.*
  No. 12-cv-04415, 2013 U.S. Dist. LEXIS 105352, at *27 (N.D. Ill. July 29, 2013)........... 9, 10
*Kljajic v. Whirlpool Corp.*
  No. 15-cv-05980, 2017 U.S. Dist. LEXIS 70784, at *71 (N.D. Ill. May 9, 2017) ................. 15
*Marcus v. BMW of N. Am., LLC*
  687 F.3d 583, 593 (3d Cir. 2012)........................................................................................ 9
*Mauer v. Am. Intercontinental Univ., Inc.*
  No. 16-cv-01473, 2016 U.S. Dist. LEXIS 121061, at *12 (N.D. Ill. Sep. 8, 2016) ............... 25
*McDaniel v. Bd. of Educ. of Chi.*
  No. 13-cv-03624, 2013 U.S. Dist. LEXIS 112868 (N.D. Ill. Aug. 9, 2013) .......................... 15
*Messner v. Northshore Univ. HealthSystem*
  669 F.3d 802, 811 (7th Cir. 2012) ....................................................................................... 8
*Oshana v. Coca-Cola Co.*
  472 F.3d 506, 513 (7th Cir. 2006) ....................................................................................... 8
*Otero v. Dart*
  301 F.R.D. 276, 283 (N.D. Ill. 2013)................................................................................... 12
*Payton v. Cnty. of Kane*
  308 F.3d 673, 677 (7th Cir. 2002) ...................................................................................... 11
*Smith v. Nike Retail Servs.*
  234 F.R.D. 648, 659 (N.D. Ill. 2006).................................................................................. 13
*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540, 1548 (2016) .............................................................................................. 12
*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011) ............. 9, 10
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ................................................. passim

## Statutes
15 U.S.C. § 7006.............................................................................................................. 7
28 U.S.C. § 2072.............................................................................................................. 12
47 U.S.C. § 227............................................................................................................. passim

## Other Authorities
137 Cong. Rec. 30821 (1991) .............................................................................................. 27
73 Fed. Reg. 51164 (Aug. 29, 2008)...................................................................................... 7
7A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005)................. 9
*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd
  1830 (Feb. 15, 2012) ....................................................................................................... 6
Pub. L. No. 102-243, 105 Stat. 2394 ..................................................................................... 6

## Rules
Fed. R. Civ. P. 23 .......................................................................................................... passim

## Regulations
47 C.F.R. § 64.1200 ................................................................................................. 6, 7, 16, 17

## Constitutional Provisions
U.S. Const. art. III................................................................................................... passim

## I. PRELIMINARY STATEMENT

Kristina Oliver ("Oliver") seeks to certify a class of individuals who allegedly received unsolicited telemarketing calls to their cell phones from Defendants TTC-Ameridial, LLC ("TTC-Ameridial") and Ameridial, Inc. ("Ameridial"). Dkt. No. 1, ¶¶ 36-39, 42-45. She alleges these calls were made with an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice without prior express written consent in violation of the Telephone Consumer Protection Act ("TCPA"). *Id.*

TTC-Ameridial does not dispute that it made telemarketing calls to Oliver, but only did so after Oliver opted-in on March 25, 2016 at http://collegeprograms.co and provided her prior express written consent to receive calls. Dkt. No. 5, ¶¶ 16, 26. Despite pleading in her complaint that she never provided Defendants with consent to call her or had any prior dealings or a relationship with Defendants (Dkt. No. 1, ¶¶ 16, 26), Oliver admits in her deposition that she expressly agreed to receive telemarketing calls, expected to receive the calls and *wanted* the calls. Dkt. No. 49-5, 16:15-17, 87:1-14; 105:18-24. Conversely, Ameridial has never made any calls to Oliver or putative class members. Dkt. No. 49-2, Nos. 1, 7.

The circumstances in which TTC-Ameridial obtained prior express written consent from each putative class member are inherently unique and create insurmountable obstacles for class certification. Putative class members cannot be readily and objectively identified by the Court through an administrative process, resulting in a non-ascertainable class. Nor do putative class members have standing to sue under Article III of the U.S. Constitution because most—if not all—provided their prior express written consent to receive telemarketing calls.

Oliver further fails to satisfy the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a). Because individualized issues predominate over the common

issues of the putative class members, a class action is not a superior method to adjudicate the proposed class, and Oliver cannot satisfy Rule 23(b)(3). Therefore, Defendants request this Court deny with prejudice Oliver's motion for class certification.

## II.    BACKGROUND

Congress passed the TCPA in 1991 to protect consumers from invasions of privacy caused by *unsolicited* telephone calls or faxes. *See* Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227).

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone …." 47 U.S.C. § 227(b)(1)(A)(iii).

In 2012, the Federal Communications Commission ("FCC") revised the TCPA with respect to certain advertisement or telemarketing calls made to cell phones. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1841 (Feb. 15, 2012); 47 C.F.R. § 64.1200(a)(2).

Effective October 16, 2013, the FCC introduced a heightened prior express written consent requirement for calls using an ATDS made to a cell phone that include or introduce an advertisement or constitute telemarketing. *Id.* The statute defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at (f)(1). "Telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* at (f)(12).

Prior express written consent consists of the following elements:

- Signature of the person called (can be in electronic or digital form)[1];
- Telephone number to which the signature authorizes the calls;
- Clear and conspicuous disclosure informing the person that the agreement authorizes the seller to call;
- Using an automatic telephone dialing system or an artificial or prerecorded voice; <u>and</u>
- Statement that the person is not required to sign the agreement as a condition of purchasing property, goods, or services.

*Id*. at (f)(8).

TTC-Ameridial does not dispute that it made telemarketing calls to Oliver, but clarifies that it only did so after she provided TTC-Ameridial her prior express written consent.[2]

## III.    ARGUMENT

A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). To show that a case falls within the exception, a plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) (noting that the court must conduct a "rigorous analysis" of the requirements under Rule 23). A court is not bound to accept the allegations on the face of the complaint as true, and "must probe behind the pleadings" when necessary to determine whether these requirements have been met. *Blair v. Supportkids, Inc.*, No. 02-cv-00632, 2003 U.S. Dist. LEXIS 6640, at *12 (N.D. Ill. Apr. 17, 2003) (citing *Gen. Tel. Co. of the Sw.*, 457 U.S. at 160).

---

[1] "The E-SIGN Act defines an 'electronic signature' as 'an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record.' 15 U.S.C. § 7006(5). The Act further defines an 'electronic record' as 'a contract or other record created, generated, sent, communicated, received, or stored by electronic means.' 15 U.S.C. § 7006(4)." 73 Fed. Reg. 51164, 51181, n. 218 (Aug. 29, 2008).

[2] Defendants' motion for summary judgment explains this issue in detail. *See* Dkt. No. 49-1, pp. 19-21. Because Defendants' motion for summary judgment and Plaintiff's motion for class certification contain overlapping and related issues, Defendants' respectfully request oral argument on both motions concurrently.

As threshold matters, the putative class representative must show that she is a member of the proposed class, *see* Fed. R. Civ. P. 23(a) ("One or more members of a class may sue … as representative parties on behalf of all members …."), and must establish that the members of the proposed class are ascertainable. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). This requirement is implied in Rule 23(a). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). The plaintiff must then establish that the case satisfies all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1-4); *Comcast*, 133 S. Ct. at 1432. The plaintiff must also satisfy at least one of the three subsections of Rule 23(b). *Id*. It is the burden of the party seeking class certification to demonstrate the requirements of Rule 23. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

**A.    Oliver fails to satisfy the threshold requirements to certify a class.**

**1.    Oliver fails to prove the proposed class is ascertainable.**

The proposed class as defined by Oliver cannot be certified, because putative class members cannot be readily and objectively identified by the Court through an administrative process, resulting in a non-ascertainable class.

An implicit Rule 23 threshold requirement is that there must be an administratively feasible way for the court to determine whether a particular individual is a class member or not. *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 226 (N.D. Ill. 2016). The Court must be able to determine a particular individual's class membership based on the "application of precise, objective criteria." *Jamison v. First Credit Servs.*, No. 12-cv-04415, 2013 U.S. Dist. LEXIS 105352, at *27 (N.D. Ill. July 29, 2013) (citing *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09-cv-05601, 2011 U.S. Dist. LEXIS 113609, at *6 (N.D. Ill. Sep. 30, 2011)). This

"ascertainability" requirement prohibits class certification where "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

In the context of TCPA class actions, the Northern District of Illinois has declined to certify classes where the plaintiff has failed to establish ascertainability. For example, the *Jamison* court determined the plaintiff could not establish "by clear and convincing evidence" that the class was ascertainable because the class definition was insufficiently definite. *Jamison*, 290 F.R.D. at 108. While membership in the proposed class only required that defendant called a potential class member's cell phone obtained from a single source, the court held that definition could include thousands of individuals who consented to receive calls on their cell phones and had no grievance under the TCPA. *Id*; *see also Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011) (stating that to identify a class under the TCPA, "it would be necessary to identify the people assigned to those numbers at the times the allegedly offending calls were made, which may not be the people currently assigned to those numbers"); *Espejo v. Santander Consumer USA, Inc.*, No. 11-cv-08987, 2016 U.S. Dist. LEXIS 142259, at *24 (N.D. Ill. Oct. 14, 2016) (finding the proposed TCPA class definition unascertainable).

These standards similarly prevent certification of Oliver's proposed class. Oliver suggests an administrative process by which the putative class members allegedly can be objectively identified, but the resulting class would be over-inclusive without subjective, individualized review by the Court. Oliver seeks to certify the following class of persons:

> All persons in the United States who TTC-Ameridial caused to be called on their cellphones from January 1, 2016 to June 27, 2016 where TTC-Ameridial obtained the phone number from Marketing Webb via the collegeprograms.co website.

Dkt. No. 54, p. 1.

As in *Jamison*, the class definition is not sufficiently definite to warrant class certification as membership only requires that potential class members received a call on their cell phone from TTC-Ameridial and the number was obtained from Marketing Webb via http://collegeprograms.co. This definition includes thousands of individuals who consented to receive calls on their cell phones and have no grievance under the TCPA.

Furthermore, Oliver relies on data analyzed by Mr. Jorgensen, which she says supports that calls were made by TTC-Ameridial and thus the class is ascertainable. But discovery and Mr. Jorgensen's report confirms no such thing. His report does not mention any calls made by TTC-Ameridial and clearly states that Ameridial made the calls—not TTC-Ameridial. Dkt. No 54-8, p. 2. Based on this report, Oliver cannot conclude that TTC-Ameridial made a number of calls and the class is therefore ascertainable. *See infra,* Part III.B.1. Nor can the class definition stand as it only includes persons who received a call from TTC-Ameridial.

And while Oliver has a list of telephone numbers called during the class period, like in *Vigus*, it will be necessary to identify the people that owned the numbers at the time of the calls, which may not be the people currently assigned to those numbers. Oliver even admits that potential class members may be required to (1) "show records verifying whether their number was a cellphone or landline and submit affidavits attesting to such facts"; and (2) "provide a declaration or documentary evidence demonstrating ownership of the telephone number at the relevant time and the fact that the number was assigned to a cellphone as opposed to a landline." Dkt. No. 54, p. 12, ¶ 43; p. 14. The Court would then need to allow appropriate cross-examination to determine the validity of each record, declaration or piece of documentary evidence.

Thus, based on the class definition—and by Oliver's own admission—the Court would be required to make a determination via fact-based, individualized review, or mini-trials on each

claim of the receipt of unsolicited telemarketing calls made by TTC-Ameridial. Nor has Oliver proposed any method by which this can be accomplished. Eligible class members cannot be readily and objectively ascertained by the Court without individualized fact-finding and therefore the class cannot be certified.

### 2. The proposed class is not certifiable because it contains members who do not have standing to sue.

Oliver's proposed class cannot be certified because most—if not all—of the putative class members provided their prior express written consent to receive calls from TTC-Ameridial and thus have not suffered an Article III injury.[3]

Article III requires a plaintiff to suffer an injury that is concrete, particularized, and actual or imminent. *Horne v. Flores*, 557 U.S. 433, 445 (2009). It must be fairly traceable to the challenged conduct of the defendant and is likely, as opposed to merely speculative, that a favorable decision by the court will redress the injury for the plaintiff to have standing to bring suit. *Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002).

For an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The injury-in-fact must also be concrete and real, and not abstract. *Id.* at 1556. The plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Id.* at 1549.

Article III's requirements apply to class actions just as they do in any other case. Rule 23 cannot expand the scope of federal jurisdiction and must be "be interpreted in keeping with Article III constraints." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Rules Enabling

---

[3] Defendants also argue that Oliver does not satisfy the standing requirement of Article III in their motion for summary judgment. *See* Dkt. No. 49-1, pp. 11-17.

Act makes clear and expressly "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart*, 564 U.S. at 366 (quoting 28 U.S.C. § 2072(b)). Reading Rule 23 to permit the resolution of claims that could not be brought as individual actions violates that prohibition. It follows that courts may not certify classes that include members who lack standing—for example, classes that include uninjured claimants. *See Otero v. Dart*, 301 F.R.D. 276, 283 (N.D. Ill. 2013) ("nearly all proposed [claimants] also likely lack standing to seek prospective relief. Certification of a Rule 23(b)(2) class is inappropriate under these circumstances."). *See also Wal-Mart*, 564 U.S. at 363-65 (finding that Rule 23(b)(2) did not authorize certification of a class where about half of the proposed class members lacked standing to seek injunctive or declaratory relief with respect to Wal-Mart's allegedly unlawful employment practices because they no longer worked for Wal-Mart). Whether viewed as a threshold requirement or as part of Rule 23(b)(3)'s predominance requirement, *see In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013), the principle is the same: no class with uninjured members can be certified.

As explained in detail in Defendants' motion for summary judgment (Dkt. No. 49-1, pp. 11-17), Oliver has not suffered an injury-in-fact under Article III. *Id*. at p. 11. Other class members similarly lack standing to sue, as Oliver has provided no evidence of a violation of the proposed class' privacy interests, and therefore an injury-in-fact, from their alleged receipt of telemarketing calls by TTC-Ameridial. *Id*. at pp. 12-13. And Oliver admits—as a member of the class—that she personally has not suffered actual damages from receipt of the call she requested from TTC-Ameridial. *Id*. at p. 13. In fact, Oliver stated in her deposition that she expressly agreed to receive telemarketing calls, expected to receive the calls and wanted the calls. *Id.* Oliver admitted that the calls did not cost her money or take away from her work. *Id.*

The TCPA was never intended to allow damages to plaintiffs like the proposed class: persons who provided their prior express written consent and requested telemarketing calls from TTC-Ameridial. Their interests are not within the zone of interests intended to be protected by the TCPA; namely, the interest in protecting consumers from unsolicited telemarketing calls. Therefore, Oliver has failed to demonstrate that she and the proposed class have suffered an injury under Article III, and therefore the class is not certifiable, because it contains members who do not have standing to sue.

**B.      Oliver fails to satisfy the Rule 23(a) requirements to certify a class.**

**1.      Oliver fails to satisfy numerosity under Rule 23(a)(1).**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." While it is true that "there is no magic number that automatically satisfies numerosity," *Smith v. Nike Retail Servs.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006), a class consisting of more than 40 members is the general threshold to satisfy the numerosity requirement of certifying a class action. *Fox v. Riverview Realty Partners*, No. 12-cv-09350, 2014 U.S. Dist. LEXIS 55260, at *9 (N.D. Ill. Apr. 22, 2014).

Oliver states that "discovery confirms … TTC-Ameridial called at least 127,489 telephone numbers, a substantial percentage of which were assigned to cellphones." Dkt. No. 54, p. 15. According to her, this is "evidenced by Mr. Jorgensen's updated report [in which] the additional data increased the number of consumers called by TTC-Ameridial from 109,760 to 127,489 distinct phone numbers that were called a total of 590,741 times." *Id*. at p. 12, ¶ 41 (emphasis added). But discovery and Mr. Jorgensen's report confirms no such thing. His report does not mention any calls made by TTC-Ameridial. In fact, he concludes that:

> Ameridial called 127,489 distinct phone numbers with an *Optin* date on or after the MarketingWebb *capturetimestamp* a total of 590,741 times between January 1, 2016 and June 26, 2016.

Dkt. No 54-8, p. 2 (emphasis added).

Mr. Jorgensen's report clearly states that Ameridial made calls—not TTC-Ameridial. From this report, Oliver cannot conclude that TTC-Ameridial made a certain number of calls and numerosity is therefore met. Furthermore, discovery has established that Ameridial has never made any calls to Oliver or putative class members. Dkt. No. 49-2, Nos. 1, 7.[4] This further calls into question the accuracy of Mr. Jorgensen's expert report. Because Oliver has not shown that any calls have been made by TTC-Ameridial, and Mr. Jorgensen's report cannot be relied upon, she does not satisfy her burden to prove numerosity under Rule 23(a)(1).

### 2. Oliver fails to satisfy commonality under Rule 23(a)(2).

Oliver's proposed class cannot be certified under Rule 23(a)(2) because the Court will need to make a determination for each putative class member as to whether they provided their prior express written consent to TTC-Ameridial.

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Although the rule speaks in terms of common questions, "what matters to class certification … [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted).

The Northern District of Illinois has found commonality to be lacking when the court is required to engage in individualized inquiries. *See Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-03809, 2017 U.S. Dist. LEXIS 67555, at *25-26 (N.D. Ill. May 3, 2017) (finding that

---

[4] Defendants' motion for summary judgment explains this issue in detail. *See* Dkt. No. 49-1, pp. 21-29.

commonality was not satisfied where highly individualized inquiry would be required to determine whether each class member suffered the same resulting injury); *McDaniel v. Bd. of Educ. of Chi.*, No. 13-cv-03624, 2013 U.S. Dist. LEXIS 112868 (N.D. Ill. Aug. 9, 2013) (holding same); *Kljajic v. Whirlpool Corp.*, No. 15-cv-05980, 2017 U.S. Dist. LEXIS 70784, at *71 (N.D. Ill. May 9, 2017) (holding that plaintiffs failed to show commonality where there was no common method of proof to support plaintiffs' claims and to allow a fact-finder to determine if plaintiffs were injured without individualized inquiry); *Foday v. Air Check, Inc.*, No. 15-cv-10205, 2017 U.S. Dist. Lexis 95183, at *8-9 (N.D. Ill. June 21, 2017) (finding that plaintiffs' claims would require inquiry into a diverse set of facts for each plaintiff that would not be consistent with the commonality requirement).

Oliver erroneously asserts that she satisfies that commonality requirement because there are three common issues driving the litigation: (1) whether a reasonable consumer to http://collegeprograms.co understood that consent was being provided for TTC-Ameridial to make the calls; (2) whether consumers were required to agree to the receipt of autodialed calls as a condition of accessing TTC-Ameridial's college match services; and (3) whether TTC-Ameridial used an ATDS to make the calls. Dkt. No. 54, pp. 2, 24-25. While Oliver may have identified three issues, she has not established the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.

Because TTC-Ameridial's consent language complies with the TCPA[5], Oliver asserts there is a common issue of whether a reasonable visitor to http://collegeprograms.co understood that consent was being provided for TTC-Ameridial to make the calls. *Id*. But as explained in Defendants' motion for summary judgment, the record establishes that online-edu-help.com is a

---

[5] Defendants' motion for summary judgment explains this issue in detail. *See* Dkt. No. 49-1, pp. 19-21.

d/b/a of TTC-Ameridial.  Dkt. No. 49-10, 47:10-16; Dkt. No. 49-12, No. 2.  Because TCPA regulations require specific elements to satisfy prior express written consent, *see* 47 C.F.R. § 64.1200(f)(8), Oliver cannot create a new TCPA requirement based on a "reasonable consumer" standard, or rely on identical mindsets of Oliver and putative class members at the time they provided their prior express written consent.  Consent is an inherently individualized question and not subject to a "reasonable consumer" standard.

Whether or not a consumer visited http://collegeprograms.co, provided their prior express written consent, and then subsequently understood that they would receive calls from TTC-Ameridial is not a common question of law or fact applicable classwide nor will it generate common answers to drive the resolution of the litigation.  Consent, and even more so as Oliver argues—the understanding of providing consent—is inherently fact-specific and requires individualized inquiries.  *See e.g. Brodsky v. Humanadental Ins. Co.*, No. 10-cv-03233, 2017 U.S. Dist. LEXIS 137608, at *27 (N.D. Ill. Aug. 28, 2017).  There can be no common mindset of a consumer when providing prior express written consent.  It requires the Court to make a determination via fact-based, individualized review, or mini-trials.

Oliver next identifies an alleged common issue of whether consumers were required to agree to the receipt of autodialed calls as a condition of accessing TTC-Ameridial's college match services.  To do so, Oliver also tries to invent a new TCPA requirement that "lead generators … provide alternative methods of contact apart from requiring consumers to agree to the receipt of autodialed calls."  Dkt. No. 54, p. 8.  But the TCPA requires no such alternative.  The statute only requires a statement in the consent disclosure that the person is not required to sign the agreement "as a condition of purchasing property, goods, or services."  47 C.F.R. § 64.1200(f)(8).  Oliver conflates the requirement of a statement—which was, in fact, on the http://collegeprograms.co

website—with the requirement of signing the agreement as a condition of purchasing, property, goods, or services. Oliver never even spoke to anyone from TTC-Ameridial or Ameridial or received any voicemails—let alone made a purchase from Defendants. Dkt. No. 49-5, 22:12-23. Thus, Oliver's argument is meritless as the http://collegeprograms.co website made that disclosure.

Regardless of Oliver's merit-based arguments, the focus for class certification is that Oliver has not affirmatively demonstrated that her claims are common of the claims of the proposed class because the success of their claims depend on facts that will not be adjudicated in Oliver's case. Putative class members who may claim that they did not understand that consent was being provided for TTC-Ameridial cannot not be resolved without requiring the Court to make a determination via fact-based, individualized review, or mini-trials.

Other significant issues that are not common classwide prohibit Oliver from satisfying the commonality requirements of Rule 23(a)(3). For example, while Oliver has a list of telephone numbers called during the class period, it is unknown whether the people that owned the numbers at the time of the calls are currently assigned to those numbers. Nor is it clear which calls were made to residential landlines or cell phones. Dkt. No. 54, p. 12, ¶ 43; p. 14. Even Oliver and her expert Mr. Jorgensen disagree on who actually made the calls. *See supra*, Part III.B.1. These issues present uncommon questions that will generate atypical answers.

In summary, Oliver has not established common issues that have the capacity in a classwide proceeding to generate common answers apt to drive the resolution of the litigation. The Court would have to engage in individualized inquiries to make a determination for each putative class member as to whether they provided prior express written consent, received the calls on a cell phone or residential landline, owned the number at the time of the call, and—according to Oliver— whether or not each class member "understood that consent was being provided to TTC-Ameridial,

LLC to make the calls". Dkt. No. 54, p. 2. These issues will predominate over any common issues, and thus Oliver fails to satisfy the commonality requirement of Rule 23(a)(2).

### 3.     Oliver fails to satisfy typicality under Rule 23(a)(3).

Oliver has not affirmatively demonstrated that her claims are typical of the claims of the proposed class because the success of the putative class members' claims depend on facts that will not be adjudicated in Oliver's case.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 296 (N.D. Ill. 2014) (citing Fed. R. Civ. P. 23(a)(3)). The premise of the typicality requirement is simply stated: "as goes the claim of the named plaintiff, so go the claims of the class." *Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 624 (C.D. Ill. 2003) (internal quotation marks omitted). As with all of the Rule 23 requirements, a plaintiff "must affirmatively demonstrate his compliance" with the typicality requirements of Rule 23(a)(3). *Wal-Mart*, 564 U.S. at 350. In support of this obligation, Oliver alleges her claims are "identical" of the class because:

> TTC-Ameridial obtained their phone numbers from Marketing Webb via the College Programs Website, that the consent language was deficient because it (1) named the wrong company and/or (2) because it forced visitors to agree to receive autodialed calls as a condition of using TTC-Ameridial's college matching services, and that Defendant used an ATDS to make the calls.

Dkt. No. 54, pp. 24-25.

Oliver makes essentially the same argument as she does to satisfy commonality. Acceptance of this "identical" representation requires the court to ignore the entire record, including admissions by Oliver. Accordingly, the success of any putative class member's claim depends on facts that cannot be adjudicated in Oliver's case. The record is clear that TTC-Ameridial only made telemarketing calls to Oliver after she provided her prior express written

consent to receive calls at http://collegeprograms.co.  Dkt. No. 5, ¶¶ 16, 26.  Because TTC-Ameridial's consent language clearly complies with the TCPA[6], Oliver attempts to argue that typicality is satisfied because the consent language (1) named the "wrong party" and (2) visitors to agree to receive autodialed calls as a condition of using TTC-Ameridial's college matching services.  Dkt. No. 54, pp. 24-25.

First, and as explained in Defendants' motion for summary judgment, the record establishes that there was no "wrong party" named and online-edu-help.com is a d/b/a of TTC-Ameridial.  Dkt. No. 49-10, 47:10-16; Dkt. No. 49-12, No. 2.  The consent language complies with the TCPA, and Oliver cannot now argue that the TCPA should contemplate a new subjective requirement of consent based on a "reasonable consumer".  Rather, evaluating consent in that manner would require the Court to make an individualized review by mini-trial for each class member.

Second, Oliver tries to invent a new TCPA requirement that "lead generators … provide alternative methods of contact apart from requiring consumers to agree to the receipt of autodialed calls."  Dkt. No. 54, p. 8.  As explained above, the TCPA requires no such alternative.  *See supra* Part III.B.2.  The statute only requires a statement in the consent disclosure that the person is not required to sign the agreement "as a condition of purchasing property, goods, or services."  47 C.F.R. § 64.1200(f)(8).  That statement was undeniably present at http://collegeprograms.co.

Regardless, the real issue is that Oliver's claims are not typical of the claims of the proposed class because the success of the putative class members' claims depend on facts that will not be adjudicated in Oliver's case.  Putative class members who may claim that they did not understand "that consent was being provided for TTC-Ameridial, LLC to make the calls" would

---

[6] Defendants' motion for summary judgment explains this issue in detail.  *See* Dkt. No. 49-1, pp. 19-21.

require the Court to make a determination via fact-based, individualized review, or mini-trials. Because Oliver has not affirmatively demonstrated that its claims are typical of the claims of the proposed class, she fails to satisfy the commonality requirements of Rule 23(a)(3).

### 4.     Oliver fails to satisfy adequacy under Rule 23(a)(4).

In order for a class to be certified, representative plaintiffs must demonstrate that they "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).  This adequate representation inquiry consists of two parts: "(1) the adequacy of the named plaintiffs as representative of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Neither Oliver nor class counsel prove they meet the requirements of Rule 23(a)(4). Plaintiff spends three paragraphs attempting to meet its burden under Rule 23(a)(4) in support of its motion for class certification, but the statements are wholly conclusory, unrelated to the record, and inadequate to meet the burden to prove adequacy.  *See* Dkt. No. 54, pp. 25-26.  Oliver has again failed to "affirmatively demonstrate [her] compliance" with Rule 23(a)(4).  *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (2011).

The first hurdle that Oliver must clear with regard to Rule 23(a)(4) is proving that Oliver is part of the class and possesses the same interests and suffered the same injury as the class members.  *See In re AT&T Mobility Wireless Data Servs. Sales Litig*, 270 F.R.D. 330, 343 (N.D. Ill. 2010).  The Supreme Court has disapproved "across the board" class actions where the class representative has suffered a different kind of injury from other members of the class.  *Gen. Tel. Co. of the Sw.*, 457 U.S. at 161.

Oliver contends that she has the same legal injury, the same claims available, and has no interests antagonistic to those of the class. *See* Dkt. No. 54. But there is significant conflict of interest between Oliver and the class, as demonstrated in Oliver's deposition testimony. For example, Oliver stated that she suffered no injury as a result of TTC-Ameridial's alleged calls and is not seeking damages:

Q:      Were you injured by that call?
A:      No.
Q:      Were you injured by the second call?
A:      No.

Exhibit A, 20:25—21:3. She expressly agreed to receive telemarketing calls, expected to receive the calls and *wanted* the calls. Dkt. No. 49-5, 11:22-23. In response to a question regarding what harm she suffered as a result of the alleged calls, Oliver stated that she was not harmed but believed the company "could have done better" in contacting her. *Id.* at 52:6-23.

And while her complaint alleges that she is seeking damages, *see* Dkt. No 1, Oliver stated during her deposition that she is not seeking damages:

Q:      What amount of damages are you seeking, in this case?
A:      No damages.

*Id.* at 44:17-19. Courts have found class representatives presumptively inadequate where they are not pursuing damages. *See Culver v. City of Milwaukee*, 277 F.3d 908, 911 (7th Cir. 2002) (holding that because the class representative was not seeking damages or an injunction, and his claim ultimately was moot, he could not serve as an adequate class representative). Finally, Oliver could not confirm that she had received calls from either Defendant, because she never spoke to anyone, caller ID did not display the name of Ameridial or TTC-Ameridial, and no voicemail messages were left. Dkt. No. 49-5, 22:12-20; 22:21-23; 108:11-111:2. Nevertheless, Oliver

purports to represent putative class members that allegedly received calls from Defendants and are pursuing statutory damages as a result.

A class representative is also inadequate where it is subject to a defense that could not be sustained against other class members. "[H]owever meritorious the suit itself may be, the claim of the class representative may be subject to a defense … that makes it an inappropriate representative of the class because other class members may not be subject to the same defense, or perhaps to any defense." *CE Design Ltd.*, 637 F.3d at 725; *see also Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 430 (N.D. Ill. 2003). Here, Oliver claims that she did not understand that she provided consent to receive calls from TTC-Ameridial. In response, Defendants must address the claims that "understanding" is required under the TCPA and supply additional defenses against Oliver that do not necessarily apply to other class members, because there is no indication that the other class members did not understand whether or not they were providing consent for calls from TTC-Ameridial.

Courts have noted that oftentimes a class representative has a merely nominal stake in the litigation, and the real plaintiff in interest is the lawyer for the class, who may have interests that diverge from those of the class members. *See, e.g. Culver*, 277 F.3d at 910. Here, Oliver has shown little vigor in pursing this case and has, for all intents and purposes, has abdicated control of litigation to counsel. During her deposition, Oliver was unsure of what it means to retain counsel, how current counsel is paid for in this suit or how expenses are paid, counsel's other legal actions, and counsel's past history. Exhibit A, 70:7-25; 38:16-44:2. Oliver stated that she did not research or investigate attorneys Woodrow and Peluso and solely relied on a conversation she had with attorney Coleman. *Id*. at 40:7—41:1. Oliver confirmed that she had only visited with counsel once prior to her deposition, and counsel has not contacted her regarding rulings in the case thus

far. *Id.* at 43:8-13, 44:3-5.  She stated that she believes the case has already been certified as a class action, is unaware of any previous rulings in the case, cannot name the Judge, and believes that the suit was filed in Denver. *Id.* at 29:3-5; 25:21-26:7.

Oliver also admitted that she is not sure who the class members are in the purported class action or how many class members are involved. *Id.* at 15:1—16:14; 17:23—18:14.  She does not know what it means when she claimed that she had no conflicts with other class members when pleading that she was an adequate class representative. *Id.* at 27:23-25.  Nor does she know what the term injunctive relief means in this lawsuit, whether injunctive relief is being sought, or what she would receive if settlement is reached. *Id.* at 44:20-24.  Further, Oliver could not name the statute under which this suit was brought or explain in general what a statute is. *Id.* at 31:7-32:1.

Taken together, these facts show that counsel acts without consulting Oliver and does not keep Oliver informed of relevant case filings and rulings.  It is clear that class counsel is the true party in interest in this matter.  Oliver cannot serve as the class representative of the purported putative class, because she is at distinct odds with the remainder of the class, is disinterested and uninformed of the facts surrounding the case, and has relinquished control of the case to its retained counsel.  As such, Oliver cannot meet her burden under Rule 23(a)(4).

C.     **Oliver fails to satisfy the Rule 23(b)(3) requirement to certify a class.**

1.     **Questions common to the class do not predominate over individual questions.**

Similar to the commonality requirement in Rule 23(a)(2), Oliver's proposed class cannot be certified under Rule 23(b)(3) because the issue of whether each putative class member provided prior express written consent, received the calls on a cell phone or residential landline, owned the number at the time of the call, and—according to Oliver—whether or not each class member

"understood that consent was being provided to TTC-Ameridial, LLC to make the calls" will predominate over any common issues. Dkt. No. 54, p. 2.

In a class action brought under Rule 23(b)(3), "[t]he 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Guillory v. Am. Tobacco Co.*, No. 97-cv-08641, 2001 U.S. Dist. LEXIS 3353, at *11 (N.D. Ill. Mar. 19, 2001) (quoting *Amchem Prods.*, 521 U.S. at 609); *see also Comcast*, 133 S. Ct. at 1432 (noting that the "same analytic principles" governing the Rule 23(a) commonality analysis apply to Rule 23(b)(3), but the latter's predominance requirement is "more demanding").

The Northern District of Illinois has denied class certification on the grounds that the issue of consent in TCPA claims is inherently fact-specific, requires individualized inquiries, and so defeats predominance. *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09-cv-05528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. Jan. 25, 2011) (declining to certify proposed TCPA class based on issues of individualized consent). Specifically, "[i]ssues of individualized consent typically predominate when a defendant sets forth specific evidence showing consent from a large percentage of potential class members and the plaintiff has not presented a method by which to ascertain consent on a class-wide basis." *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16-cv-01473, 2016 U.S. Dist. LEXIS 121061, at *12 (N.D. Ill. Sep. 8, 2016).

In *Brodsky v. Humanadental Insurance Co.*, the court granted defendant's motion to decertify a class of plaintiffs asserting TCPA claims, holding that issues of individualized consent on behalf of the putative class members to receive faxes from defendant defeated issues of predominance and superiority. 2017 U.S. Dist. LEXIS 137608, at *27. According to the court, the trial would be consumed and overwhelmed by testimony from each individual class member

in an effort to determine whether the class member consented to receive fax messages from defendant. *Id.* at \*14. Where such individualized consent inquiry is required, class treatment is no longer warranted under Rule 23. *Id.* at \*27

Here, the Court would be required to conduct the same individualized consent inquiry into whether each putative class member provided prior express written consent, received the calls on a cell phone or residential landline, owned the number at the time of the call, and—according to Oliver—whether or not each class member "understood that consent was being provided to TTC-Ameridial, LLC to make the calls". Dkt. No. 54, p. 2. Oliver even admits that potential class members may be required to (1) "show records verifying whether their number was a cellphone or landline and submit affidavits attesting to such facts"; and (2) "provide a declaration or documentary evidence demonstrating ownership of the telephone number at the relevant time and the fact that the number was assigned to a cellphone as opposed to a landline." *Id*. at p. 12, ¶ 43; p. 14. The Court would then need to allow appropriate cross-examination to determine the validity of each record, declaration or piece of documentary evidence. Such individual testimony would likewise consume and overwhelm trial. Precedent dictates that Rule 23 prohibits class certification in this scenario.

Because it cannot be universally determined whether each putative class member provided prior express written consent, received the calls on a cell phone or residential landline, owned the number at the time of the call, and—according to Oliver—whether or not each class member "understood that consent was being provided to TTC-Ameridial, LLC to make the calls", Oliver's proposed class cannot be certified under Rule 23(b)(3).

2. **A class action is not a superior method to adjudicate the proposed class.**

Certification under Rule 23(b)(3) is appropriate only if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For at least three reasons, Oliver fails to satisfy this requirement.

First, the "difficulties in managing" this class action cannot be overstated. *Id.* at (b)(3)(D). Class treatment cannot be permitted at the expense of Defendants' rights to present all of their defenses against the claims of every putative class member. There is no feasible way for this Court resolve these claims, each subject to the fact-bound, individualized defenses regarding standing, the provision of prior express written consent, whether the calls were made to a cell phone or residential landline, who owned the number at the time of the call, and—according to Oliver— whether or not each class member "understood that consent was being provided to TTC-Ameridial, LLC to make the calls". Dkt. No. 54, p. 2. Only by ignoring the individualized nature of these defenses can Oliver assert that the proposed class action is an efficient way of proceeding.

Second, Oliver overstates the benefit of consolidating the putative class members' claims. She insists that "there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered …." *Id.* at p. 30. But Congress passed the TCPA in hopes of allowing individual consumers who are aggrieved to litigate in small claims court. *See* 137 Cong. Rec. 30821 (1991) (statement by Sen. Hollings) ("[I]t is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court."). Individual suits do not require expensive legal feels and complex discovery as they often do in class actions.

Third, a class action is an inferior method to adjudicate the proposed class because it prevents individuals who believe they were actually harmed by the alleged unlawful calls by TTC-Ameridial from bringing suit and recovering damages. Oliver has stated that she suffered no injury

as a result of TTC-Ameridial's alleged calls and is not seeking damages. Exhibit A, 20:25—21:3; Dkt. No. 49-5, 44:17-19. Nor was Oliver harmed by the calls but believed the company "could have done better" in contacting her. *Id.* at 52:6-23. Nevertheless, Oliver purports to represent putative class members that allegedly received calls from Defendants and are pursuing statutory damages as a result. By doing so, Oliver precludes other individuals who believe they were actually harmed by the alleged unlawful calls by TTC-Ameridial from bringing suit and recovering damages.

In sum, because individualized issues predominate over the common issues of the putative class members, a class action is not a superior method to adjudicate the proposed class, and Oliver cannot satisfy Rule 23(b)(3).

## IV.     CONCLUSION

Oliver does not affirmatively demonstrate all of the requirements to certify the proposed class. The class is not ascertainable nor do the putative class members have standing to sue under Article III. Oliver also fails to satisfy the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a). Because individualized issues predominate over the common issues of the putative class members, a class action is not a superior method to adjudicate the proposed class, and Oliver cannot satisfy Rule 23(b)(3). Therefore, Defendants request this Court deny with prejudice Oliver's motion for class certification.


Dated: October 12, 2017              Respectfully submitted,

                                      _/s/ Jeffrey S. Bunn_____

                                     LATIMER LEVAY FYOCK, LLP
                                     Jeffrey S. Bunn, IL #3126903
                                     55 W. Monroe St., 11th Floor
                                     Chicago, Illinois 60603

Telephone: (312) 422-8000
Facsimile: (312) 422-8001
Email: jbunn@llflegal.com

-and-

COPILEVITZ & CANTER, LLC
William E. Raney, MO #46954 (*Pro hac vice*)
Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice*)
310 W. 20th Street, Suite 300
Kansas City, Missouri 64108
Telephone: (816) 472-9000
Facsimile: (816) 472-5000
Email:  braney@cckc-law.com
        kmitchell@cckc-law.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following parties via the Court's CM/ECF electronic filing system on this 12th day of October, 2017:

WOODROW & PELUSO, LLC
Steven L. Woodrow
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com

LAW OFFICES OF STEFAN COLEMAN, P.A.
Stefan Coleman
201 S. Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Email: law@stefancoleman.com

MCCALLISTER LAW GROUP, LLC
Marc McCallister
120 North LaSalle St., Suite 2800
Chicago, IL 60602
Telephone: (312) 345-0611
Email: eme@mccallisterlawgroup.com

      /s/ *William E. Raney*
      William E. Raney