**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KRISTINA OLIVER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 16 C 5177 |
| TTC-AMERIDIAL, LLC, and AMERIDIAL, INC., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kristina Oliver was curious about options for pursuing a master's degree, so she entered her contact information into a website that promised more information about higher education opportunities. Shortly thereafter, she received eight calls on her cellular phone. She has sued TTC-Ameridial, LLC, which concedes it called Oliver, and Ameridial, Inc. under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. The defendants have moved for summary judgment on Oliver's claims, and Oliver has moved to certify a class of similarly-situated plaintiffs.

### Background

TTC-Ameridial provides telemarketing and lead generation services for education businesses, such as colleges. In September 2014, TTC-Ameridial purchased the assets of an entity now known as Shanley Corporation (Shanley), which engaged in similar work. One of the assets TTC-Ameridial purchased, online-edu-help.com, is at

the center of the present lawsuit.

In March 2016, Kristina Oliver—who was preparing to graduate college and was thinking about her future—entered her name, mailing address, e-mail address, and phone number into a site that promised more information about opportunities in higher education. The following disclosure was featured prominently on the site: "By checking this box, I expressly agree to receive marketing phone calls, text or SMS messages, or emails, from online-edu-help.com or *Marketing Partners at any phone number I provide, even if the number is a wireless number . . . I understand that such calls may be placed using automatic dialing equipment or pre-recorded messages, and that I am not required to check this box to purchase any goods or services." D.E. 49, Defs.' Ex. E (image of website). Oliver checked the box.

As TTC-Ameridial's corporate designee stated during a deposition, TTC-Ameridial's business was to call individuals like Oliver and, if they were interested in a particular program, connect them with an enrollment officer at a college. D.E. 58, Pl.'s Ex. A at 111 (TTC-Ameridial Rule 30(b)(6) Dep.). During her deposition, Oliver stated she was expecting to be called about which programs were best suited to further her education after her graduation from college. D.E. 49, Defs.' Ex. D at 105 (Oliver Dep.).

Between March 28 and April 1, 2016, Oliver received eight calls on her cellular phone, but she either did not answer the calls or answered to a dead line. TTC-Ameridial concedes that it made telemarketing calls to Oliver.

## Discussion

Oliver has sued TTC-Ameridial and Ameridial under the TCPA. The TCPA makes it unlawful "to make any call (other than a call . . . made with the prior express

2

consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). TTC-Ameridial and Ameridial have moved for summary judgment, arguing that Oliver expressly consented to the disputed calls. Summary judgment is only appropriate if, after considering all pleadings, discovery, and affidavits in the non-moving party's favor, a reasonable factfinder could not find in the non-moving party's favor. *Winsley v. Cook Cty.*, 563 F.3d 598, 602-03 (7th Cir. 2009).

TTC-Ameridial argues it is entitled to summary judgment because it received "prior express written consent" from Oliver, which TCPA regulations require. 47 C.F.R. § 64.1200(f). "Express consent is an affirmative defense on which the defendant bears the burden of proof." *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) (citation omitted). The Federal Communications Commission has promulgated regulations defining the consent required to make telemarketing calls to cellular phones, which the TCPA treats differently from calls to landlines. Under the regulations, the express written consent must

> include a clear and conspicuous disclosure informing the person signing that, by executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system . . . and the person is not required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8)(i). The parties dispute whether the agreement between Oliver and TTC-Ameridial meets this standard. Oliver first argues that she did not consent to calls from TTC-Ameridial, but only from another entity. Second, Oliver asserts that TTC-Ameridial made consent "a condition of purchasing . . . property, goods, or services" in contravention of the regulation. Oliver does not dispute that the written

3

disclosure is otherwise consistent with section 64.1200.  *See* D.E. 49, Defs.' Ex. E (image of disclosure text).

Oliver first argues that she consented to receive calls from online-edu-help.com, which she says was and is owned by Shanley, not from Online EDU Help, which is owned by TTC-Ameridial.  In support of her argument, she makes two points.  First, the name "online-edu-help.com" contains different letters and punctuation from "Online EDU Help," and, as a result, a reasonable consumer might be confused under the circumstances.  Second, the Illinois Secretary of State lists online-edu-help.com as an assumed name of Shanley, not of TTC-Ameridial.  D.E. 58, Pl.'s Ex. D at 2 (LLC file detail report).

TTC-Ameridial has, however, introduced unrebutted evidence that it acquired online-edu-help.com from Shanley well before Oliver ever requested a call.  D.E. 49, Defs.' Ex. H at 14 (bill of sale).  In September 2015, TTC-Ameridial applied to "adopt and transact business under the assumed name of Online EDU Help."  D.E. 49, Defs.' Ex. J at 1 (application to adopt, change, cancel, or renew an assumed name).  Since then, TTC-Ameridial has used the terms "online-edu-help.com" and "Online EDU Help" interchangeably.  D.E. 49, Defs.' Ex. I at 68. (TTC-Ameridial Rule 30(b)(6) Dep.).

Oliver asks the Court to infer that online-edu-help.com and Online EDU Help are separate entities, and that online-edu-help.com is owned by Shanley on the basis of the Illinois Secretary of State's report, but that would not be a reasonable inference.  TTC-Ameridial has presented testimony that the two entities are really two names for the same entity, D.E. 49, Defs.' Ex. I at 68 (TTC-Ameridial Rule 30(b)(6) Dep.); evidence that it does business as Online EDU Help, D.E. 49, Defs.' Ex. J at 1 (application to

4

adopt, change, cancel, or renew an assumed name); and evidence that it owns online-edu-help.com, D.E. 49, Defs.' Ex. H at 14 (bill of sale).  Oliver's only evidence is the Secretary of State's report, but that is not enough to give rise to a genuine factual dispute over whether the two names correspond to the same entity.  In particular, the Secretary of State report does not give rise to a genuine conflict over TTC-Ameridial's ownership of online-edu-help.com.  The only reasonable inferences from the evidence are that TTC-Ameridial owns and does business as online-edu-help.com and that it simply failed to update the Secretary of State filing.  In sum, Oliver has not offered a basis permitting a finding that her consent to receive calls from online-edu-help.com does not constitute consent to receive calls from TTC-Ameridial, the owner of online-edu-help.com.

The cases that Oliver relies upon do not suggest otherwise.  Each stands for the proposition that under the TCPA, the scope of a person's consent to receive calls depends upon the context in which consent was given.  *See, e.g., Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (Kennelly, J.); *Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (Ex), 2016 WL 890297, at *8-9 (N.D. Ill. Mar. 8, 2016); *Zeidel v. YM LLC USA*, No. 13-cv-6989, 2015 WL 1910456, at *3 (N.D. Ill. Apr. 27, 2015); *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1135 (S.D. Cal. 2014).  In *Kolinek*, the plaintiff had given his phone number to a pharmacy for purposes of verification; the Court concluded this did not amount to consent to receive telemarketing calls.  In *Zeidel*, there was a dispute over whether the plaintiff had been

told before giving her phone number that text messages would be sent to that number.[1]

The scope of Oliver's consent is quite clear—she agreed to receive calls about higher education opportunities from online-edu-facts.com. That is the very type of calls she received. Unlike in, for example, *Kolinek*, the defendant in this case is not trying to shoehorn calls that do not fit into the scope of consent. By analyzing whether consent to calls from online-edu-facts.com establishes consent to calls from TTC-Ameridial, the Court is not ignoring the scope of Oliver's consent but rather giving effect to it.

Oliver also argues that her consent does not meet the requirements of 47 C.F.R. § 64.1200. First, she argues, in two footnotes, that TTC-Ameridial's consent disclosure does not comply with the TCPA's requirements because the language of the disclosure does not match the text of the consent regulation word-for-word. The assumption behind Oliver's very brief argument—that the regulation requires the caller's disclosure to precisely match the words of the regulation—finds no support in the regulation, which contains no such requirement. *See* 47 C.F.R. § 64.1200(f)(8)(i). And Oliver cites no case that imposes such a requirement. The Court sees no basis to require a consent disclosure to match the language of the regulation word-for-word.

Oliver also contends that her consent is ineffective because TTC-Ameridial required her to agree to take calls as a condition of using its services. This is a barrier to TTC-Ameridial's attempt to establish an affirmative defense, Oliver contends, because regulations require that the signing party may not be "required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i).

---

[1] In *Sherman*, the plaintiff had not consented at all, and in *Haysbert*, the plaintiff had expressly consented.

In response, TTC-Ameridial first asserts that the TCPA regulation only requires it to include in its consent agreement a statement that the signing party is not required to sign as a condition of making a purchase; the regulation does not require that statement to be true. But the regulation requires the agreement to include a "disclosure" "informing" the signing party that "the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8). The common meaning of "disclose" is "to make known or public," *Disclose*, Merriam-Webster's Dictionary (3d ed. 1993), and the common meaning of to "inform" is "to impart information or knowledge." *Inform*, Merriam-Webster's Dictionary (3d ed. 1993). Thus the regulation quite clearly implies that it is not enough to intone no-condition language; the language must be truthful. The proposition that the FCC adopted a regulation that would permit essentially meaningless undertakings is, quite simply, not viable. The FCC's ruling in *In the Matter of Lyft, Inc.*, 30 FCC Rcd. 9858 (Sept. 11, 2015), shows that the mere inclusion of a compliant statement is insufficient to satisfy section 64.1200. *Id.* at *3. The FCC found that Lyft, a ride-sharing service, required its users to accept e-mails and text messages from the service in order to purchase rides from the service. *Id.* at *2-3. But the Lyft user agreement stated: "You acknowledge that you are not required to consent to receive promotional messages as a condition of using the Lyft Platform or the Services." *Id.* at *2. The FCC concluded that Lyft's disclosure was "illusory in nature" and therefore violated the TCPA consent regulations. *Id.* at *3.

Oliver also argues that her consent was ineffective because TTC-Ameridial procured it by requiring her to agree to receive its calls as a condition of using its

7

services. That, however, is not the sort of condition prohibited by the applicable regulation. As TTC-Ameridial correctly points out, the regulation forbids an entity from requiring a party from "enter[ing] into such an agreement as a condition of *purchasing* any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i) (emphasis added). The record does not reflect that TTC-Ameridial required Oliver to agree to calls as a condition of purchase or, indeed, that TTC-Ameridial sells any sort of services or goods to consumers like Oliver. Rather, it appears that TTC-Ameridial's customers are the clients or schools to which it provides leads. D.E. 58, Pl.'s Ex. A at 106-07 (TTC-Ameridial Rule 30(b)(6) Dep.; testimony that TTC-Ameridial "work[s] with many different clients and the schools they represent . . . to provide quality leads that will increase the customer's chances of enrolling."). Oliver has offered no evidence suggesting that she ever even had the option of making a purchase from TTC-Ameridial; there is no evidence, for example, that she ever provided TTC-Ameridial or online-edu-help.com with payment information, such as a credit or debit card. *See* D.E. 49, Defs.' Ex. E (image of website). In short, Oliver's citation of the regulation's condition prohibition does not defeat TTC-Ameridial's consent defense. As a result, the Court finds that Oliver's consent to TTC-Ameridial was effective, because its disclosure did not violate the prohibition in section 64.1200(f) of imposing conditions on purchases. In sum, the Court concludes that Oliver provided "prior written express consent" for TTC-Ameridial to make telemarketing calls to her; no reasonable jury could find otherwise. For this reason, TTC-Ameridial is entitled to summary judgment on Oliver's TCPA claim.

Oliver likewise cannot maintain her claim against the other defendant named in the case, Ameridial. The defendants argue that Oliver has not presented any evidence

of Ameridial's involvement in the making of the challenged calls. Oliver concedes she is "without a sufficient basis" to proceed against Ameridial but asks the Court to dismiss Ameridial without prejudice, in case facts obtained later show a basis for its liability. But because TTC-Ameridial received Oliver's consent to make the telemarketing calls at issue, Ameridial cannot face any potential liability from this suit. Ameridial is thus also entitled to summary judgment.

The Court notes that it has granted summary judgment without definitively deciding the defendants' standing arguments. The defendants argue that Oliver lacked standing, contending that she did not suffer an injury-in-fact as required by Article III and that she does not satisfy prudential standing requirement, as she is outside the zone of interests the TCPA protects. *Id.* at 16. These arguments are somewhat related to the consent defense; defendants argue, in essence, that her consent means that she was not injured, at least not in a way the TCPA is designed to protect. But Oliver does allege that she received unwanted calls, which is likely sufficient to establish standing under Article III. And the prudential standing argument effectively merges with the consent defense; it is really a merits argument, not a standing argument. Were courts to treat the TCPA consent defense as implicating standing, then virtually every case in which a defendant claimed that a plaintiff consented to calls would generate a Rule 12(b)(1) motion and, possibly, an evidentiary hearing that would be indistinguishable from a trial on the merits. The Court does not think it appropriate to import an affirmative defense into a threshold determination of standing. *See generally Leyse v. Bank of Am., N.A.*, 804 F.3d 316, 327 (3d Cir. 2015) (declining to resolve a TCPA claim on standing grounds when consent as an affirmative defense may resolve the matter).

Finally, having granted summary judgment in favor of the defendants, the Court denies as moot Oliver's motion to certify a class.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [dkt. no. 49] and denies as moot Oliver's motion for class certification [dkt. no. 54]. The Court directs the Clerk to enter judgment in favor of defendants and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 12, 2018